Norma Jean WHITE, Appellant,

v.

The STATE of Texas, Appellee.

No. 46345.

Court of Criminal Appeals of Texas.

June 27, 1973.

Rehearing Denied July 17, 1973.

John R. McFall, Lubbock, for appellant.

Bill Neal, Dist. Atty., Vernon, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for assault with intent to commit murder with malice aforethought. The punishment was assessed at 15 years by the court following a verdict of guilty.

The sufficiency of the evidence is not challenged. Suffice it to say, the record reflects that the complaining witness, Charles Kenneth Melton, was driving to his place of employment in Acme, Texas, on the night of July 6, 1971 about 10:40 or 10:45 p. m. when a white 1961 or 1962 Chevrolet automobile overtook him and the woman driver yelled that she was the woman who had called him from Memphis about "riding" some horses and that she needed to talk to him. Melton stopped and the woman, whom he identified as the appellant, approached him and engaged him in conversation. It was a bright moonlight night and the appellant came within four feet of Melton.

Six or eight weeks earlier Melton had received a long distance call from a woman identifying herself as a Mrs. Taylor who wanted him to break some horses.

After identifying herself as the woman who made that call, the appellant asked Melton if he could help her with her horses. He again declined. At this time she attempted to spray something in his face and then ran to the rear of the car yelling, "Get him! Get him! Get him!" Just at this time the co-defendant Lonnie D. Garrison arose from the floorboard of the Chevrolet and got out armed with a shotgun or rifle. Melton knew Garrison who had previously had an affair with Melton's wife. He pleaded, "Lonnie D., don't you shoot me," and Garrison replied, "I'm going to." Melton then jumped out of his pickup truck and ran toward a nearby railroad track. Apparently, a .45 caliber slug

hit him in the kneecap and knocked him down.[1] Seeing approaching lights, he tried to drag himself back to the highway when Garrison shot him in the shoulder with a shotgun. The couple then fled in the Chevrolet. Passing motorists found Melton and rushed him to the hospital.

Appellant and Garrison were arrested while they were together in Garrison's pickup on a dirt road about 14 miles south of Childress at approximately 1 a. m. the next morning.

Testifying in her own behalf the appellant admitted being in Childress on the night in question but denied any involvement in the alleged crime. She related that she came to Childress to see Garrison about a loan so that she might apply for a license to serve mixed drinks at the two lounges she operated in Amarillo; that, after contacting Garrison, he met her at the Sage Brush Cafe about 10:30 p. m. and that they left in his pickup to go to his farm so he could fix a flat tire on a tractor and to talk about the loan. She left her 1961 white Chevrolet at the cafe in Childress. She denied she ever owned or possessed a .45 caliber pistol or had ever telephoned Melton at any time. Several prior convictions were used in an effort to impeach her.

In rebuttal the State called Charlotte Moore who related she lived with the appellant in Amarillo for some four months prior to the shooting and that she had seen a .45 caliber pistol in appellant's apartment and that a tear gas pencil she owned had been lost or misplaced while she was living in appellant's apartment.

The area manager of the Southwestern Bell Telephone Company produced company records that reflected a person to person telephone call had been placed from the appellant's apartment phone number in

---

1. Melton testified he did not see the appellant with a gun and that Garrison was only armed with a shotgun. .45 caliber shells were found at the scene by Sheriff's deputies.

Amarillo to the complaining witness' number in Childress on May 8, 1971.

Initially, appellant complains that the trial court erred in overruling her motion for continuance filed on the day her trial commenced (January 17, 1972). The motion was based principally upon the absence of two allegedly material witnesses and the fact that appellant's counsel had been retained on January 9, 1972.

The offense was alleged to have occurred "on or about the 6th day of July, A.D., 1971." The indictment was presented and filed on September 23, 1971.

The hearing on the motion for continuance revealed that the appellant and her co-defendant Garrison originally employed a Childress attorney, Richard Bird. He had obtained appellant's release on bail after her arrest not long after the shooting. On November 23, 1971, he notified the appellant and her co-defendant that their trial was set for January 17, 1972. Later, apparently several days before Christmas, 1971, the appellant and Garrison employed attorney F. B. Godinez of Lubbock. Fearing a possible conflict of interest, attorney Godinez contacted attorney John McFall, also of Lubbock, about the possibility of his representation of the appellant. A report of an investigator for Godinez was made available to McFall as early as December 24, 1971. McFall began conferring with Godinez about the case on January 4, 1972 and he was "formally retained" by the appellant on January 9, 1972.

■ An accused in a criminal case may not use his constitutional right to counsel so as to manipulate the commencement of his trial to suit his convenience and pleasure.

Further, it is noted that on the date of the trial the court granted motions for severance and offered the appellant and her co-defendant the choice of who would go to trial first and the appellant elected to proceed to trial prior to her co-defendant.

As to the two alleged material witnesses, Jimmy Thomas and Yolanda Uglius Campbell, it is shown that the State located Thomas in jail in Hollis, Oklahoma, and found the witness Campbell in Fort Worth. Both were returned to Hardeman County and testified for the defense.

■ We find no error in the trial court's action in overruling the motion for continuance.

Next appellant complains that the court erred in refusing to let her have the offense reports prepared by Texas Ranger Hickman for the purposes of impeachment and cross-examination after he had testified.

Reliance is had upon the "Gaskin Rule." See Gaskin v. State, 172 Tex.Cr.R. 7, 353 S.W.2d 467 (1962).

The request for the offense reports came during the cross-examination of the complaining witness but the appellant did indicate he intended to recall Ranger Hickman for further cross-examination if permitted the offense reports.

After examining the offense reports in camera, the trial court refused to permit appellant's access to the same, but, at appellant's request, ordered the same sealed and forwarded to this court with the appellate record.

■ ". . . Where a witness for the State has made a report or has given a statement prior to testifying, the defendant, after a timely and specific motion, is entitled to inspect and use such prior and available report or statement for cross examination and impeachment purposes, and this right obtains even though the witness has not used the instrument to refresh his memory." Zanders v. State, 480 S.W.2d 708, 710 (Tex. Cr.App.1972).

See also Gaskin v. State, 172 Tex.Cr.R. 7, 353 S.W.2d 467 (Tex.Cr.App.1962).

■ While it is true that Article 39.14, Vernon's Ann.C.C.P., excepts the work product of the prosecution from pre-trial discovery once the "Gaskin Rule" comes into play, the statute no longer controls.

If an accused brings himself within the "Gaskin Rule," *it is error* to fail to require production of a prior and available report or statement of the witness. The error may be harmless. The harmfulness of the error is dependent upon whether an examination of the report or statement by this court on appeal demonstrates that the accused should have been allowed the statement for the purposes of cross-examination and possible impeachment. Error per se will result if the accused is denied the opportunity to have made available such statement for the appellate record for the purpose of showing injury, if any. Zanders v. State, supra; Rose v. State, 427 S.W.2d 609, 619 (Tex.Cr.App.1968) (concurring opinion).

It is clear that the trial court erred in refusing to permit inspection and use of the offense reports of Ranger Hickman for the purposes of cross-examination and impeachment upon timely request. However, an examination of the sealed reports contained in this record fail to show just how this appellant was harmed by the court's erroneous denial of his request. The reports were entirely consistent with the Ranger's testimony and we find that nearly all of the information contained in the reports was developed during the trial of the cause. We find no reversible error.[2]

In two grounds of error the appellant complains that the court refused her the use of the reports of Ranger Hickman for the cross-examination of the complaining witness Melton and rebuttal witness Moore.

Artell v. State, 372 S.W.2d 944 (Tex.Cr. App.1963), limited the so-called "Gaskin Rule" to a previous report or statement personally made by the witness testifying for the State. Such a report or statement is not to be made available to cross-examine and attempt to impeach a witness who did not make the report or statement. Such limitation has been criticized where the report or statement has been used to refresh the memory of a non-maker witness prior to testifying. 16 Baylor L.Rev. 51, 60. Leal v. State, 442 S.W.2d 736, 739 (Tex. Cr.App.1969) (concurring opinion); Rose v. State, supra (concurring opinion). *Cf.* Dover v. State, 421 S.W.2d 110 (Tex.Cr. App.1967).

In the instant case the reports of Ranger Hickman were not shown to have been prepared by the witnesses Melton or Moore or reviewed by them prior to testifying.

No error is perceived.

In three grounds of error appellant contends the in-court identification of the appellant by Kenneth Melton was tainted by a suggestive display of photographs to the complaining witness three or four days prior to trial at a time when her counsel was not present.

On direct and cross-examination, the complaining witness made positive identifications of the appellant all without objection.[3]

Subsequently, in the absence of the jury, the appellant developed the fact that several days prior to trial and months after the indictment Ranger Hickman had shown Melton five pictures of various women and asked if he could identify any of them and

---

2. Appellant contends the method used in this case makes it difficult for a defense counsel to properly point out to this court just how he is harmed for he is never able to see the sealed reports. This writer agrees and continues in the belief that ". . . the trial court's inspection of the instrument in question in camera and his statement that no inconsistency appears, and this Court's subsequent examination of the instrument forwarded under seal is often a poor substitute for actual use by appellant of such instrument on cross-examination." Rose

v. State, supra, note 3 (concurring opinion). See also Zanders v. State, supra, note 4.

3. In her brief appellant contends she did not learn of the photographic identification until after the in-court identification had been made and that she made her objection at the first opportunity. *Cf.* Martinez v. State, 437 S.W.2d 842 (Tex. Cr.App.1969); Evans v. State, 444 S.W. 2d 641, 644 (Tex.Cr.App.1969); Thornton v. State, 451 S.W.2d 898 (Tex.Cr. App.1970); Green v. State, 467 S.W.2d 481, 482 (Tex.Cr.App.1971).

that Melton selected the appellant's photograph. Neither appellant nor her counsel was present. The officer did not single out and suggest which picture was that of the appellant and Melton testified that the photographic identification did not influence his in-court identification as he had an opportunity to closely observe the appellant in the bright moonlight at the time of the alleged offense.[4] Melton did indicate he expected the appellant's picture to be in the group handed to him. Appellant relies upon this fact and the interval of six months from the time of the alleged offense and the photographic identification, and the fact that Melton had, shortly after the alleged offense, described appellant as being dark haired when, in fact, she was red haired.

We find nothing in the record to show that the Ranger commented upon the photographs or that the procedure used was impermissibly suggestive. See Nash v. State, 486 S.W.2d 561 (Tex.Cr.App.1972).

Photographic identification does not automatically taint an in-court identification. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Ward v. State, 474 S.W.2d 471 (Tex.Cr.App.1972); Jones v. State, 458 S. W.2d 62 (Tex.Cr.App.1970). Convictions based on eyewitness testimony at a trial following a pre-trial identification will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. See Simmons v. United States, supra; Dunlap v. State, 477 S.W.2d 605 (Tex.Cr.App.1972); Ward v. State, 474 S.W.2d 471 (Tex.Cr.App.1972). See also Glover v. State, 470 S.W.2d 688 (Tex.Cr.App.1971); Proctor v. State, 465

S.W.2d 759 (Tex.Cr.App.1971); Green v. State, 467 S.W.2d 481 (Tex.Cr.App.1971). Thus, for pre-trial photographic display procedures to constitute reversible error they must violate the two-part test laid down in Simmons v. United States, supra. First, the photographic display itself must be impermissibly suggestive and, next, it must give rise to a very substantial likelihood of irreparable misidentification. United States v. Sutherland, 428 F.2d 1152 (5th Cir. 1970); United States v. Ervin, 436 F.2d 1331 (5th Cir. 1971).

The mere fact that a picture of the accused is shown to a witness prior to the in-court identification is only one of the factors to be considered in determining whether the in-court identification is of independent origin. Proctor v. State, supra.

Following the hearing in the absence of the jury, the court found the in-court identification to be untainted by the photographic identification and refused to strike the in-court identification. Considering the totality of the circumstances, we agree that the trial court's ruling was correct.

We further note that the State made no effort to bolster the in-court identification by any pre-trial identification.

We now turn to appellant's claim that she was entitled to counsel at the time of the photographic identification.[5]

In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 67 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the United States Supreme Court held that a post indictment lineup where the accused was exhibited to witnesses is a "critical stage" requiring the presence of counsel and that, otherwise, a presumption of impropriety

4. When asked if the photograph "helped in your identification here today, didn't it?," Melton replied, "No." He was then asked, "Not a bit?," and he again answered, "No."

5. This photographic examination took place on Thursday or Friday before the trial the following Monday. It is not clear from the record whether the appellant was in custody or not at the time, it appearing from hearings on pre-trial motions that the appellant was free on bond prior to trial. While not clearly established, it would appear that neither the appellant nor her attorney was present at the photograhic identification.

obtains. In the absence of counsel or an affirmative waiver of counsel, the prosecution must establish by clear and convincing evidence that any subsequent in-court identification was based upon observations other than the lineup identification. See also Martinez v. State, 437 S.W.2d 842 (Tex. Cr.App.1969). *Cf.* Kirby v. Illinois, 402 U.S. 995, 91 S.Ct. 2178, 29 L.Ed.2d 160 (1971).

Neither this court nor the United States Supreme Court has extended the *Wade* "critical stage" rule to those instances where a pre-trial photographic identification of the accused takes place after an accused has been arrested and formally charged with a crime.

Only recently the Third Circuit Court of Appeals, sitting en banc, held, in United States ex rel. Reed v. Anderson, 461 F.2d 739 (3rd Cir. 1972), that a pre-trial photographic identification by witnesses was not a critical stage of the proceedings requiring the presence of defense counsel to satisfy the Sixth Amendment of the United States Constitution overruling, in part, United States v. Zeiler, 427 F.2d 1305 (3rd Cir. 1970). We agree and adopt the reasoning of Judge Aldisert in his excellent opinion for the court. See also United States v. Bennett, 409 F.2d 888, 898–900 (2nd Cir. 1969) cert. den. 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101; United States v. Ervin, 436 F.2d 1331, 1334 (5th Cir. 1971); United States v. Fitzpatrick, 437 F.2d 19, 25–26 (2nd Cir. 1970); United States v. Williams, 436 F.2d 1166, 1169 (9th Cir. 1970); United States v. Von Roeder, 435 F.2d 1004, 1010 (10th Cir. 1971); United States v. Collins, 416 F.2d 696, 699 (4th Cir. 1969); United States v. Robinson, 406 F.2d 64, 69 (7th Cir. 1969).

After the above was written and prior to this opinion being handed down the United States Supreme Court in United States v. Ash, —— U.S. ——, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), held ". . . that the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of al-lowing a witness to attempt an identification of the offender, for such does not constitute a 'critical stage' of the prosecution."

■ Appellant's contention that she was entitled to counsel at the photographic identification is rejected under the circumstances of this case.

■ Lastly, appellant contends she was denied due process of law resulting from the suppression of evidence by the District Attorney. First, she contends that there was abundant testimony that the woman present at the time of the alleged assault had been described as "dark haired" when she has bright red hair, and that this information should have been furnished to her prior to trial rather than having her counsel "drag it out of the witnesses."

The State contends that Melton's description of his female attacker as having "dark hair" is consistent with appellant's actual appearance—that of a dark haired woman, pointing out that her red hair would appear dark at night. In support of the contention, attention is called to appellant's black and white photograph introduced by the defense in which appellant's hair appeared dark.

It is to be noted that appellant learned of the claimed discrepancy and made much use of the same in the presence of the jurors who were actually able to observe the color of appellant's hair. This does not present a case of withholding or suppression of evidence. See Means v. State, 429 S.W.2d 490, 496 (Tex.Cr.App.1968).

■ Appellant next contends that since the State gave polygraph tests to Melton and his wife there must be "some speculation or suspicion that someone else besides the appellant was involved in the assault ·. . . . ."

The fact that the polygraph tests had been administered was disclosed to the appellant prior to trial, but appellant contends that perhaps something in Ranger Hickman's offense reports which were sealed

and forwarded to this court might indicate suppression of evidence. Those reports indicate that the polygraph tests given reflect that both Melton and his wife were telling the truth.

It is to be observed that the results of polygraph or lie detector tests are inadmissible for either the State or the defense even though there may be a stipulation. Romero v. State, 493 S.W.2d 206 (Tex.Cr.App.1973).

Appellant's last contention is overruled.

The judgment is affirmed.