Jack G. NEAL, Appellant,

v.

The STATE of Texas, Appellee.

No. 63819.

Court of Criminal Appeals of Texas, En Banc.

Oct. 24, 1984.

Rehearing Denied Feb. 27, 1985.

Rehearing Denied March 27, 1985.

Melvyn Carson Bruder, Dallas, for appellant.

C. Stephen Hughes, Dist. Atty., Sulphur Springs, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for official misconduct under then V.T.C.A. Penal Code, Sec. 39.01(a)(5).[1] Appellant, a lawyer, appeared pro se. After finding appellant guilty, the jury assessed punishment at five years imprisonment and a fine of $5,000.00. Appellant brings twelve grounds of error.

In two grounds of error, appellant challenges the sufficiency of the evidence. The indictment in pertinent part, alleges that appellant, on or about the 27th day of September, 1976 "did then and there, while a public servant, to-wit: District Attorney of the Eighth Judicial District of Texas, with intent to obtain a benefit for himself, intentionally and knowingly take and misapply a thing of value belonging to the State of Texas, to-wit: a Texas State Treasury Warrant Number PO88795 in the amount of $7,000.00, issued September 13, 1976, by the State Comptroller of Public Accounts pursuant to Item 14, Judiciary Section—Comptroller's Department, Senate Bill 52, 64th Legislature, 1975, which came into [appellant's] custody and possession by virtue of his office and employment."

The evidence shows that appellant was District Attorney of the Eighth Judicial District from January 2, 1973 until December 31, 1976. On September 13, 1976, the State Comptroller issued the warrant named in the indictment to appellant as payee. The warrant was issued to appellant to pay the salaries of investigators and secretaries for the district attorney's office.

Appellant's secretary testified that appellant used one bank account, entitled "Jack G. Neal, Attorney" account, for both his private law practice and the business of the district attorney's office. The account was held in a Hopkins County bank.

Bank records showed that on September 23, 1976, the account had a balance of $0.97. On September 27th, the State warrant went through the bank. The warrant had been endorsed "Jack G. Neal." A deposit slip in the amount of $7,000.00 dated 9–27–76 bore the notation "State" and the signature "Jack G. Neal." Appellant's secretary testified that she recognized the signature on the slip as appellant's.

Accordingly, the bank credited the account with $7,000.00 on September 27th. Several checks previously drawn on the account cleared immediately.

From September 27th until December 29th, additional deposits were made. By December 30, 1976, however, the account had a balance of only $1,783.88.

Through the period September 23 to December 31, a total of $2,230.00 was paid out of the account to appellant's secretary, who worked for him both as a private secretary and an employee of the district attorney's office. No investigator worked for the office in this period.

The State put in evidence photocopies of a number of cancelled checks that had been drawn on the account, either by appellant or by his secretary at his direction, between September 27 and December 31. Appellant drew many of the checks for cash. The payees of the rest make up a wide variety of individuals and businesses.

Before prosecution was begun, the State sought from appellant an accounting of his use of the $7,000.00, but never received one.

■ Appellant argues that the only evidence to show the warrant was paid is hearsay. Because hearsay is no evidence, appellant claims there is no evidence to

---

1. At the time of the offense, the statute read as follows:
   "Section 39.01. Official Misconduct.
   "(a) A public servant commits an offense if, with intent to obtain a benefit for himself or to harm another, he intentionally or knowingly:
   "...

   "(5) takes or misapplies any thing of value belonging to the government that may have come into his custody or possession by virtue of his employment, or secretes it with intent to take or misapply it, or pays or delivers it to any person knowing that such person is not entitled to receive it."

show the warrant was a "thing of value." Testimony established that such a warrant is evidence of an indebtedness of the State to the payee in the amount named. Appellant obtained credit in the face amount when he endorsed and deposited the warrant in his bank. The evidence was sufficient to show that the warrant was a thing of value.

Appellant argues further that there is no evidence to show that he obtained a benefit for himself from the warrant because the act of depositing the warrant alone does not suffice to establish this element of the offense. Appellant goes on to argue that by endorsing and depositing the warrant, "he did with the warrant what he was supposed to do," and that the evidence thus fails to show that he *mis* applied the warrant. Appellant relies on *Dickey v. State*, 65 Tex.Crim. 374, 144 S.W. 271 (1912).

In *Dickey*, the Court held that a city secretary had not misapplied city funds by depositing a check into a city account different from the one it was intended for, in an attempt to cover up his prior embezzlement from the account. The Court said that these facts showed no conversion of the check to the secretary's own use, since the city still had all the money, although in the wrong account.

■ The instant case is altogether different. The State issued the warrant to appellant to pay the salaries of secretaries and investigators. Appellant deposited the warrant in an account bearing his name and obtained credit with it. He then drew on this credit to pay obligations other than the salaries of secretaries and investigators, and to obtain cash for himself. The evidence showed that appellant used the warrant inconsistently with its purpose so that he might obtain a benefit for himself.

The evidence is sufficient to sustain the conviction. Grounds of error number seven and eight are overruled.

In his sixth ground of error, appellant contends that the trial court erred in denying his motion to quash the indictment because the indictment "fails to state sufficient facts with sufficient clarity to charge an offense." Appellant argues that the indictment fails to plead facts in support of the allegation that he intended to obtain a benefit for himself. The omitted factual allegation is essential because, appellant claims, "unless the State alleges facts to show a conversion of the property taken or misapplied for the accused's benefit, no offense is charged."

■ Appellant arrives at this conclusion because he believes the omitted allegation "replaces the 'conversion' allegations required by Article 95, the predecessor to section 39.01(a)(5)." A comparison of Art. 95 of the Old Penal Code with the new Sec. 39.01(a)(5) shows that "convert" as a form of the prohibited conduct was dropped when the new code was enacted. Under the new code, a public servant commits an offense when, with the necessary intent and culpable mental state, he *takes* or *misapplies* any thing of value, etc. We do not find that "convert" made its way back into the statute by way of the specific intent requirement. The indictment tracked the language of the statute in alleging the prohibited conduct. The allegations in the indictment were sufficient to charge the offense. The sixth ground of error is overruled.

In his ninth ground of error, appellant claims the trial court erred in denying his motion to quash the indictment based on Art. 27.03(2), V.A.C.C.P. Appellant contends that a person not authorized by law was present when the grand jury was deliberating upon the accusation against appellant. At the hearing on the motion the testimony showed that James L. Chapman, who succeeded appellant as District Attorney, appeared before the grand jury and presented evidence of appellant's offense. He denied that he was in the grand jury's presence while they deliberated upon the accusation. Two grand jurors testified that Chapman was not in their presence while they deliberated upon the accusation. A third grand juror stated his belief that the grand jury had discussed with Chap-

man the reasons for or against returning the indictment.

Before trial, Chapman disqualified himself from representing the State any further in the prosecution. The motion to disqualify and its supporting allegations do not appear in the record.

Appellant argues that he has made the factual showing called for in *Payne v. State*, 502 S.W.2d 812 (Tex.Cr. App.1974), and that *Payne* mandates reversal of this case. We disagree. Chapman's subsequent disqualification is irrelevant to the issue of whether a person not authorized by law was present when the grand jury was deliberating. Chapman said he was not present at deliberations, and two grand jurors agreed. If there is conflicting evidence at the pretrial hearing on the motion to set aside the indictment, the trial judge will be the sole judge of the weight and credibility of the witnesses' testimony. *Hamilton v. State*, 621 S.W.2d 407 (Tex.Cr. App.1981). The evidence supports the trial court's denial of the motion to quash based on Art. 27.03(2), V.A.C.C.P. The ninth ground of error is overruled.

In three grounds of error, appellant contends that his challenge to the array made pursuant to Art. 35.07, V.A.C.C.P.,[2] should have been sustained. He argues that the district clerk was without authority to excuse prospective jurors who had been summoned for jury service. This violation, he claims, calls for reversal because it is reversible error per se, with no need to prove harm, and because the violation denied him "the representative cross-section of the community which the jury selection statutes promote in furtherance of his constitutional rights regarding a trial by jury."

The trial court held a hearing on the challenge, at which the district clerk testified. The court overruled the challenge, and appellant asked the judge to attach the jurors whom the clerk had excused and have them brought before the court. The court overruled this request.

The record reflects that the sheriff's office summoned by mail 250 people for jury service in this cause. Thirty-one of these summonses were never delivered. Forty-five of the jurors summoned returned an exemption card to the clerk's office claiming a statutory exemption, and were excused, a procedure allowed by Art. 35.04, V.A.C.C.P. Twenty-six people returned an exemption card, but claimed no exemption. The district clerk excused them from service also. Finally, the district clerk or deputy clerk excused thrity-seven people because they "called in or something."

Only the trial court has authority to excuse prospective jurors who have not filed an exemption card. Art. 35.03, V.A.C. C.P.; *Stephenson v. State*, 494 S.W.2d 900 (Tex.Cr.App.1973). While this Court does not condone the unauthorized excusing of jurors by the district clerk, *Stephenson*, supra, neither do we find it calls for reversal of the conviction in this case.

In his brief, appellant states that 111 people appeared for jury service. The strike lists, however, show a venire of only 73 names. What happened to the remaining 38 veniremen is unexplained. The voir dire was not recorded. The lists show that both the State and appellant used all of their peremptory strikes. The jury was selected from the first 21 veniremen on the jury list. The record does not show that appellant asked for extra strikes, or that the State be allowed fewer strikes, or that appellant was forced to accept a juror objectionable to him.

Appellant has failed to show that the trial court's refusal to quash the venire harmed him or impaired in any way appellant's right to trial by an impartial jury. Absent such proof, no reversible error is

**2.** "Art. 35.07. Challenge to the Array.

"Each party may challenge the array only on the ground that the officer summoning the jury has wilfully summoned jurors with a view to securing a conviction or an acquittal. All such challenges must be in writing setting forth distinctly the grounds of such challenge. When made by the defendant, it must be supported by his affidavit or the affidavit of any credible person. When such challenge is made, the judge shall hear evidence without delay whether or not the challenge shall be sustained."

shown. *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr.App.), cert. denied, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980); *Henson v. State*, 638 S.W.2d 504 (Tex.App.—Houston [1st dist.] 1981, no pet.); cf. *Walker v. State*, 645 S.W.2d 294 (Tex.Cr.App. 1983).

The first, second and third grounds of error are overruled.

■ In a related ground of error, appellant contends that his challenge to the array should have been sustained because the jurors were not selected ten days before the first day of a term of court, in violation of ARt. 2096, Tex.R.Civ.Stat. This ground of error is without merit. Art. 2096 clearly provides that additional jurors may be selected as they are needed throughout the term of court. Furthermore, because appellant has again failed to show he was harmed, there is no reversible error. *Stalcup v. State*, 269 S.W. 1044 (Tex.Cr.App.1925). Appellant's fourth ground of error is overruled.

Appellant claims a fifth ground of error as follows:

"THE TRIAL COURT ERRED IN ALLOWING (OR REQUIRING) THE DEFENDANT TO GO TO TRIAL WITHOUT A LAWYER OR WITHOUT A VALID WAIVER OF THE RIGHT TO COUNSEL, IN VIOLATION OF THE DEFENDANT'S RIGHTS UNDER THE STATE AND FEDERAL CONSTITUTIONS."

Accordingly, we must test appellant's claim of no valid waiver against the facts of the record.

Appellant was first indicted for this offense on June 15, 1977. The case went to trial on November 14, 1977 and ended in a mistrial on November 21. Appellant was represented by his retained attorney Palmer. Thereafter the first indictment was quashed, and appellant was reindicted February 3, 1978.

The judge who had presided over the first trial was again administratively assigned to preside over the second. From his office in Denton, the trial judge wrote to appellant in Hopkins County and the specially assigned prosecutor in Dallas County. This letter appears in the record and is dated March 3, 1978. In the letter the judge sets a pretrial hearing for March 22 and trial for April 3 in Sulphur Springs, Hopkins County. He states, "It is my understanding that [appellant] is representing himself pro se and that Edward I. Palmer is no longer involved as [appellant's] attorney on this case." The judge states further, "I expect all parties to be present and ready to proceed to trial at that time."

It appears that after appellant received this letter, he and the trial judge had a telephone conversation, the substance of which was reconstructed—on the first day of trial—as follows:

"THE COURT: Mr. Neal, you are a practicing attorney of the State of Texas, aren't you?

"MR. NEAL: Oh, yes.

"THE COURT: And you had indicated to the Court previously that you did intend to try this case pro se?

"MR. NEAL: Your Honor, I talked with you on whatever date is set out in this motion and you asked me about that and I said that I knew I would be continuing without Mr. Palmer. That I would but I might—I didn't use the word definitely I was going to hire Mr. Alexander but you remember that I discussed I probably would hire him to try this case. But, I would proceed on my motion."

At the pretrial hearing on March 22, appellant submitted a Motion to Allow Pro Se Appearance. The motion states that appellant's former lawyer Palmer "join[s] herein." The second numbered paragraph states:

"That Jack G. Neal, defendant, is a duly licensed attorney of the State Bar of Texas with many years of trial experience in both civil and criminal matters; that he is well able to represent himself in this cause, being knowledgable both as to the law and the facts; and further, that he desires to appear *pro se* in this

matter, and that he has so appeared in this cause to this time."

and concludes:

"WHEREFORE, premises considered, defendant and his counsel of record in an earlier dismissed cause pray the Court to allow the defendant to appear in this matter *pro se.*"

The motion is signed by appellant as "Defendant" and Palmer as "Movant."

The trial judge signed an order allowing appellant "to appear *pro se* in the case at bar" and releasing Palmer of any further responsibility to the court or appellant in the case. The order recites findings of fact in substantially the same language as the second numbered paragraph of the motion, quoted above. At the hearing itself, this exchange took place:

"THE COURT: ...

"Also, there is an order which was signed and entered this morning excusing Mr. Ed I. Palmer from any responsibility as Defense Attorney for Mr. Neal and in effect indicates that Mr. Neal is to act on his own behalf, pro se, in this matter.

"Is that your desire, Mr. Neal?

"MR. NEAL: Yes, sir. Also, I want it in the record. I think it's already there but Mr. Palmer has not participated in this cause. Never retained in this cause. He participated only in the previous indictment in this cause. Has had absolutely no participation in this matter."

The trial judge did not quash the indictment at the pretrial hearing. On the morning trial was set to begin, appellant filed his First Motion for Continuance. The motion asserts that "At the conclusion of [the pretrial] hearing it became quite apparent to [appellant] that in order to protect his rights that he obtain the services of an attorney."

*Thereupon,* the motion continues, appellant contacted a Dallas lawyer and met with him on March 25. On March 27 the lawyer called the trial judge and asked him to continue appellant's case beyond the April 3 trial date because he was already set for trial on April 3 in Dallas. The judge refused.

Appellant's First Motion for Continuance concludes:

"The Defendant can not go to trial without his counsel, William F. Alexander and should the Court force the Defendant to go to trial without his counsel, William F. Alexander, the Defendant will be denied his right of counsel and therefore request this Court to continue this case until such time as William F. Alexander can appear as Defendant's counsel."

The trial judge overruled the motion, and appellant tried the case pro se.

■ On this record, we conclude that appellant made a valid waiver of his right to counsel at the time he sought and obtained the court's permission to appear pro se. Appellant, joined by his attorney Palmer, stated to the court that he was an experienced, knowledgeable trial lawyer, well able to represent himself in the case. Appellant does not now deny the truth of this statement. Appellant claims rather that under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) and our cases that apply it, the trial court was not allowed to infer that appellant knew and appreciated the dangers of self-representation, or understood the charge against him, from the fact that appellant was an experienced criminal lawyer and a former district attorney. Appellant argues that *Faretta* bars the trial court from taking appellant's professional status as a criminal lawyer into account in deciding whether appellant knew what he was doing when he asked to appear pro se, and made that choice with his eyes open.

Under *Faretta* and our cases, a defendant's incompetence in the law may not stand in the way of his right to represent himself. On the other hand, competence in the law evidenced by licensure as an attorney and years of experience in criminal litigation, obviously carries with it an awareness of the dangers of self-representation. Language in *Faretta* itself implies as much:

"... a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, ..."

*Faretta v. California*, 422 U.S. at 835, 95 S.Ct. at 2541.

The record supports the conclusion that appellant made a knowing and intelligent waiver of his right to counsel. Moreover, appellant, as an attorney experienced in the trial of criminal cases, obviously was aware of the dangers of self-representation. *Faretta*, supra; *Martin v. State*, 630 S.W.2d 952 (Tex.Cr.App.1982).

This ground of error also alleges that the trial court erroneously required appellant to go to trial without a lawyer.

▮▮▮ On March 3, the trial court told the parties that trial would begin on April 3. Appellant formally waived his right to counsel in his motion to appear pro se, made and granted on March 22, twelve days before he knew he was to go to trial. Not until March 25 did appellant even contact the lawyer he contends he had told the trial court in early March he *might* retain. On April 3, the court called the case for trial in Sulphur Springs. Appellant moved the court to continue the trial "until such time as William F. Alexander can appear as Defendant's counsel," with no indication of when that time might come, if ever. An accused in a criminal case may not use his constitutional right to counsel so as to manipulate the commencement of his trial to suit his convenience and pleasure. *White v. State*, 496 S.W.2d 642 (Tex.Cr.App.1973). Under the circumstances of this case, the trial court's denial of the motion for continuance was not an abuse of discretion. *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *Ex parte Windham*, 634 S.W.2d 718 (Tex.Cr.App.1982); see also *United States v. Fowler*, 605 F.2d 181 (5th Cir.1979), cert. denied, 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785 (1980); *United States v. Gates*, 557 F.2d 1086 (5th Cir. 1977), cert. denied, 434 U.S. 1017, 98 S.Ct. 737, 54 L.Ed.2d 763 (1978).

Appellant's fifth ground of error is overruled.

In three related grounds of error, appellant complains of the trial court's handling of the jury's first attempt to reach a verdict on punishment.

The trial court correctly charged the jury on their power to recommend probation. Neither party objected to the charge. Problems arose, however, with the verdict form, which read as follows:

"We, the Jury, having found the Defendant guilty of the offense of official misconduct as charged in the indictment assess his punishment at _____

"_____

"FOREMAN"

"And, we the Jury, having assessed the punishment of the Defendant at not more than ten years, and having further found that he has never before been convicted of a felony in this or in any other state, we do/we do not recommend that the imposition of sentence be suspended and that he be placed on probation.

"_____

"FOREMAN"

The jury, through its foreman, sent a note to the court in this form:

"10 yr sentence—$5,000.00 fine and make restitution 5 yr of the sentence be probated

"I (sic) this the way it should be stated on the verdict form."

In response to this note, the court simply instructed the jury to follow the instructions in the charge and continue their deliberations.

When the bailiff informed the court that the jury had reached a verdict, the trial judge understandably expected problems. He suggested to counsel that the verdict be brought in so that he might read it, and if there should be a problem with it, the court would discuss that with counsel before bringing the jury back in. The State and appellant both agreed to this plan.

▮▮▮ Appellant complains now for the first time that the trial court erred by failing to follow the statutory procedures

for accepting a verdict. See Art. 37.01 et seq., V.A.C.C.P. Specifically, he argues that "[The trial court] should have had counsel, the defendant and the jury in the courtroom when he first read the jury's first punishment verdict, and then asked the jury if that were their verdict, and then asked if there were any objections to the verdict or requests that the jury be polled." Appellant waived the error, if any, by assenting to the suggestion of the trial court that the jury not be returned until the court and the parties had read and discussed the verdict.

Appellant's twelfth ground of error is overruled.

When the trial judge read the verdict, he found that there was indeed a problem. The jury had filled in the top part of the verdict form, quoted above, with "10 years confinement and $5,000.00 fine with recommendation that 5 years of the sentence be probated." The foreman had signed on the top signature line.

■ Art. 42.12, Sec. 3a, V.A.C.C.P., provides that "In no case shall probation be recommended by the jury except when the sworn motion and proof shall show, and the jury shall find in their verdict that the defendant has never before been convicted of a felony in this or any other State." Because the jury's verdict failed to make the necessary finding, its recommendation of probation was without effect.

The trial court declined to accept this verdict, and instead, attempted to remedy the problem as we set out below. Appellant objected and asked the court to declare a mistrial, or to accept the verdict as "a ten year sentence with five thousand dollar fine, probated for five years." The trial court had no authority to probate the sentence upon the jury's recommendation, because as it stood, the verdict did not make the finding required by Art. 42.12, Sec. 3a.

The trial judge prepared a new verdict form in four paragraphs, with blank spaces allowing the jury to assess, successively, a term of years, a term of years and fine, a term of years and probation, and, finally, a term of years and fine, both to be probated. The statutory finding of no prior felony conviction was incorporated into the paragraphs granting probation. The trial judge brought the jury back in and stated that he had received a copy of their verdict, and that there was the possibility that the jury had misunderstood the charge. The judge read and gave the new verdict form to the jury and asked them to retire once more and deliberate.

■ It is not only within the power, but it is the duty of the trial judge, to reject an informal or insufficient verdict, call the attention of the jury to the informality or insufficiency, and either have the same corrected with their consent, or send them out again to consider of their verdict. Art. 37.10, V.A.C.C.P.; *Eads v. State*, 598 S.W.2d 304 (Tex.Cr.App.1980); *Garrett v. State*, 262 S.W.2d 414 (Tex.Cr.App.1953). While the trial judge did not call the jury's attention to the specific problem in their verdict, neither did appellant object to this oversight, but insisted that the only choice open to the judge—if he was not to accept the verdict—was to declare a mistrial.

■ The trial court's decision not to accept the jury's first verdict was not error. Ground of error number ten is overruled.

Finally, appellant complains that the trial court's submission of the new verdict form with the remark that "there is a possibility that the jury has misunderstood the Court's Charge" constituted an improper comment on the issue of punishment. Appellant relies on *Hay v. State*, 472 S.W.2d 157 (Tex.Cr.App.1971).

In *Hay*, the jury returned to the courtroom with a verdict at the guilt-innocence phase. The trial court gave the verdict form back to the foreman to sign. When the foreman returned the signed form, the trial judge said "Mr. Foreman, I believe you have done this wrong." The trial judge then sent the jury back to consider their verdict. They shortly returned with a verdict of guilty.

Reversing the conviction, this Court wrote that the trial court "had indicated its belief to the jury that a verdict of not guilty was 'wrong.' The only other verdict the jury could return after considering their verdict would be that of guilty."

Thus *Hay* is distinguishable. In *Hay* the verdict was at guilt-innocence, where the jury's only alternatives were guilty or not guilty. When the trial court expressed the belief that the one alternative was "wrong," the inevitable inference in the jury's mind was that the other was "right."

▮ In the instant case, by contrast, the verdict was at punishment, where the jury had a range of choice. The trial court did not express any judgment of the propriety of the first, faulty verdict, but remarked instead in terms of the possibility of a misunderstanding.

*Hay* does not support appellant's contention. We find no error in the trial court's action. Ground of error number eleven is overruled.

The judgment is affirmed.

CLINTON, J., concurs in result.

MILLER, J. dissents to disposition of Ground of Error 5.

McCORMICK, J., not participating.

TEAGUE, Judge, dissenting.

Under the peculiar facts and circumstances that are presented in this case, I am unable to agree with that part of the majority opinion that holds that the State established that appellant affirmatively and knowingly waived his right to have the assistance of counsel at his trial. Therefore, I respectfully dissent.

I first point out that Jack G. Neal, appellant, was originally indicted and tried in another cause for allegedly committing the same offense as the one alleged against him in the indictment in this cause. A mistrial was declared in the first trial, during which appellant was represented by counsel of his choice. However, for reasons not reflected in the record, that attorney's legal representation was terminated after the first trial had ended. Subsequent to the declaration of the mistrial, appellant was *reindicted.* I find that it is this reindictment that caused appellant to be in the predicament that he found himself in on the morning that he was forced to go to trial without counsel.

It is obvious from the record that one of the concerns the parties, and the trial judge, had at the first trial was whether the indictment in that cause was sufficient to sustain a conviction against the appellant. And I find that this is what caused the mistrial of the first trial, and in turn caused the State to reindict appellant. From the record, there also appears to have been a serious question whether the new indictment would also sustain a conviction against appellant. In light of this background, it is understandable why appellant challenged the validity of the reindictment, through a pro se motion to quash, without the assistance of counsel. In sum, as a licensed attorney who appears to have been just as competent as any other licensed attorney of this State to prepare and file a motion to quash the indictment, I find that until the trial judge overruled the motion to quash the indictment, there was no need on appellant's part to employ another attorney to represent him at his trial—especially when there might not be a trial if the trial judge sustained his pro se motion to quash. By implicitly holding to the contrary, I find that the majority is oblivious to the real world that exists beyond the summit where we sit.

The record reflects that appellant was not represented at trial by either retained or court appointed counsel. However, prior to the commencement of trial, and shortly after the trial judge denied his motion to quash the reindictment, appellant sought to secure the services of William F. Alexander, who was then a private practitioner in Dallas, to represent him for trial purposes. When appellant learned that Alexander was unable to represent him, he filed a pro se motion for continuance. The motion for

continuance was in all things denied by the trial judge.

Appellant presents for review twelve grounds of error. I would sustain appellant's fifth ground of error, namely: "The Trial Court erred in allowing (or requiring) the defendant to go to trial without a lawyer or without a valid waiver of the right to counsel, in violation of the defendant's rights under the State and Federal Constitutions."

In pertinent part, the reindictment alleges that appellant,

"while a public servant, to-wit: District Attorney of the Eighth Judicial District of Texas, with intent to obtain a benefit for himself, intentionally and knowingly [took] and [misapplied] a thing of value belonging to the State of Texas, to-wit: a Texas State Treasury Warrant Number PO88795 in the amount of $7,000.00, issued September 13, 1976, by the State Comptroller of Public Accounts pursuant to Item 14, Judiciary Section-Comptroller's Department, Senate Bill 52, 64th Legislature, 1975, which came into the said Jack G. Neal's custody and possession by virtue of his office and employment."

This indictment attempted to allege a violation of V.T.C.A., Penal Code, Section 39.-01(a)(5). A jury found appellant guilty and assessed punishment at five years' confinement in the penitentiary. A $5,000 fine was also assessed against appellant.

What is before this Court does not implicate the factual situation of an accused who requested, but was refused by the trial judge, the right to represent himself at trial. Cf. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

The question that is before this Court is whether appellant voluntarily, knowingly and intelligently waived his constitutional right to have the assistance of counsel at his trial. I find he did not, and further find that the State did not establish that he did.

The Constitutional right to counsel at trial is guaranteed by the Sixth Amendment to the Federal Constitution, which is made applicable to the States by virtue of the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The following is axiomatic:

"Representation by counsel is crucial to the effectuation of all the other procedural protections which the legal system offers to the defendant. If those protections are to be meaningful and not merely a sham, it is essential, [unless affirmatively waived], that each defendant have legal assistance to realize their intended benefits." American Bar Association Project on Minimum Standards for Criminal Justice. *Providing Defense Services*, p. 13 (1967).

In *Johnson v. Zerbst*, 304 U.S. 458, 462–463, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), when the Supreme Court made the following statement, it implicitly held that the Sixth Amendment right to counsel may be waived: "The Sixth Amendment withholds from federal, [and now State courts], in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has *or waives the assistance of counsel*." [My Emphasis].

If an accused is tried without counsel, and the prosecution claims on appeal that the accused waived counsel, it has a heavy burden to demonstrate on the record that a voluntary, intelligent, and knowing waiver of the right to counsel actually occurred. *Johnson v. Zerbst*, supra; *Trevino v. State*, 555 S.W.2d 750 (Tex.Cr.App.1977). Thus, before it can be stated that appellant affirmatively waived his right to assistance of counsel, the record must clearly reflect that he did so voluntarily, intentionally, and knowingly, *Johnson v. Zerbst*, supra; *Ex parte Bird*, 457 S.W.2d 559 (Tex.Cr.App. 1970), and such will not be presumed from a silent record, *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Furthermore, courts will indulge every reasonable presumption against the

validity of such a waiver. *Johnson v. Zerbst,* supra; *Ex parte Bird,* supra.

I have carefully reviewed the record of appeal for evidence that appellant expressly waived his right to counsel, but find nothing therein that reflects or indicates that this ever occurred. It is necessary therefore to make the determination whether appellant, by acts, words, or deeds, made manifest an intent to waive counsel.

The State makes a two-part argument in its brief to support its contention that appellant waived his right to the assistance of counsel. It first argues that "a defendant may not manipulate his right to counsel to thwart a trial," thus implying that appellant's motion for a continuance was merely a tool that he used in order to prevent the trial from commencing. The State next appears to argue that because appellant was a former district attorney, "of much experience," this was sufficient to establish waiver on his part to the right to counsel.

In making the latter argument, I believe the State not only overlooks the age old adage, that a lawyer who represents himself at trial has a fool for a client, but also overlooks the fact that when it comes to the right to have counsel at one's trial, the Constitutional guarantee of the right to counsel does not make any kind of distinction between accused persons. Constitutionally, all accused persons are entitled to have the assistance of counsel at trial, unless such is affirmatively waived. This is true regardless of what the accused's former status in our society might have been. I believe that both the Federal and State Constitutions protect absolutely the right of an accused to be represented at trial in the fullest measure, either by counsel of choice or by court appointed counsel, if indigent, unless there is an affirmative waiver of the right to counsel. Thus, the fact appellant in the past might have been a criminal district attorney, "with much experience," is irrelevant and immaterial when it comes to deciding the question, whether, *as an accused,* he affirmatively waived his right to counsel at his trial.

A corollary to the Constitutional right to counsel is that the accused is entitled to counsel of his own choice and he should be afforded a reasonable period of time, as well as a fair opportunity, to secure such counsel. *Garrett v. State,* 94 Tex.Cr.R. 556, 252 S.W. 527 (Tex.Cr.App.1923); *Henderson v. State,* 137 Tex.Cr.R. 18, 127 S.W.2d 902, 127 S.W.2d 903 (1939). This Court has held a trial court's refusal to afford the accused such reasonable time and fair opportunity to secure counsel of his choice may constitute reversible error. *Stroebel v. State,* 366 S.W.2d 575 (Tex.Cr. App.1963).

Of course, the right to have reasonable time and fair opportunity to obtain counsel of one's choice must be exercised by using due diligence, which, if it is claimed on appeal by the State that the accused did not exercise due diligence, will be determined from the facts presented.

The State's main argument that appellant, by his actions prior to trial, affirmatively waived counsel for trial purposes appears to rest upon the course of events that occurred in the trial court prior to the scheduled date of trial, which was April 3rd. As previously pointed out, the State also argues that appellant's actions in seeking a continuance of his trial on April 3rd amounted to an attempt to "manipulate the right to counsel to thwart the trial." In light of what the State contends, I find it necessary to review the events that occurred prior to and on the date of April 3, 1978, when trial commenced in this cause. Therefore, I will briefly summarize the facts that relate to or might have a bearing on appellant's contention that he did not affirmatively waive his Constitutional right to have counsel at his trial to assist him, and the State's response that appellant's actions amounted to nothing more than an attempt to "manipulate the trial."

The record reflects that on March 3, 1978, the trial judge, who was specially assigned to hear this cause, advised both the special prosecutor and appellant of the pre-trial and trial dates he had selected for the case. This was done by mail. He also

stated in his letter that it was his understanding that an attorney who had previously represented appellant in the former cause, at which appellant was tried but in which a mistrial was declared, see supra, was no longer representing appellant. The trial judge also stated the following in his letter: "It is my understanding that Mr. Neal, [appellant], is representing himself pro se ..."

Pursuant to the letter of the trial judge, that was dated March 3rd, a hearing on the pre-trial motions was set for and occurred on March 22, 1978. The record reflects that on that date, but prior to the commencement of the hearing, appellant filed an instrument entitled "Motion To Allow *Pro Se* Appearance." The record does not reflect or indicate just what caused appellant to file this motion. Nevertheless, the trial judge granted the motion. A reading of the motion does not reflect any express statement that appellant would represent himself at his trial, which was scheduled to commence on April 3rd. On the other hand, there is also no express statement that he would not represent himself, pro se, at his trial. The trial court's order, granting the motion, also does not expressly refer to the scheduled trial. If nothing else was present in the record, I believe that the motion itself would encompass the trial. See, however, post.

The pre-trial motions in the record, which relate to the March 22nd hearing, consisted of a motion to quash the reindictment that was filed on February 3rd, and a motion for discovery, which were prepared and filed by appellant himself. The hearing that was held on March 22nd primarily concerned appellant's pre-trial motion to quash the indictment, which was denied by the trial judge after the hearing.

I next move to the date of the trial, April 3rd. By the uncontradicted statements of appellant, which were made in reference to his motion for continuance, appellant appears to have made it clear to the trial judge, prior to the hearing that was held on March 22nd, that in the event the trial judge denied the motion to quash the indict-

ment he had filed, he had no intention of thereafter representing himself pro se.

Appellant stated into the record that after he had received the trial judge's letter of March 3rd, he spoke by telephone with the trial judge, and advised the judge that he was going to represent himself, pro se, only through the March 22nd pre-trial hearing, if his motion to quash the indictment was not granted. He also stated into the record that in the event the motion to quash was denied he would then employ William F. Alexander of Dallas to represent him for trial purposes. Appellant's statements were neither questioned, refuted, contradicted, nor disputed by anyone, including the trial judge.

In both *Hicks v. State*, 525 S.W.2d 177 (Tex.Cr.App.1975), and *Canada v. State*, 660 S.W.2d 528 (Tex.Cr.App.1983), this Court held that uncontroverted factual statements of counsel, though unsworn, may be considered by this Court for purposes of the decision making process.

Appellant stated into the record that on March 25th, he contacted Alexander. He also stated that on March 27th, Alexander had a telephone conversation with the trial judge, at which time Alexander made a plea to the judge to continue appellant's trial to a later date, because of a conflict Alexander then had in trial settings. The judge rejected the plea that Alexander had made. Appellant thereafter, pro se, prepared and filed a sworn first motion for continuance, which was denied by the trial judge on April 3rd.

I believe that on April 3rd, after appellant appeared in court without counsel, and sought a continuance to obtain counsel of his choice, the trial judge should have been particularly careful to safeguard appellant's Constitutional right to have the assistance of counsel for trial purposes. I further believe that before rejecting appellant's uncontradicted explanation why he did not then have counsel, and denying his motion for continuance, and putting appellant to trial without counsel, the trial judge should have at least questioned appellant if he had any doubts with respect to the truth

or validity of the statements appellant had made as to why he was then present without counsel. However, the trial judge did not take issue with any of the oral statements appellant made in open court, or those contained in the sworn motion for continuance.

Of course, a motion for continuance that is made by the accused in order to obtain the services of an attorney is addressed to the discretion of the trial court. However, that discretion must be exercised in such a manner that it does not infringe upon any constitutional rights of the accused, such as the right to counsel. Where the trial court in a criminal case goes clearly beyond the proper bounds of discretion in denying an application for a continuance, such as denying a motion for continuance that is made to obtain the services of counsel, without any rational basis, and thereby prevents the accused from having the assistance of counsel at his trial, such has been held to cause the resulting conviction to be void. See *Zasada v. State*, 19 N.J.Super. 589, 89 A.2d 45 (Appellate Division, 1952).

Notwithstanding that an accused is entitled to counsel of his own choice, and should be afforded reasonable time and fair opportunity to secure such counsel, he must use diligence, and may not use a motion for continuance to prevent the trial from occurring or justice from being administered. Thus, the mere fact that the accused appears in court without counsel, and requests a continuance until he can obtain an attorney of his choice, is insufficient, without more, to require the motion for continuance to be automatically granted. E.g., *Stanfield v. State*, 212 S.W.2d 516, 520 (1948).

In this instance, however, I find that appellant established that he diligently attempted to carry into execution what he had previously informed the trial judge over the telephone what he was going to do in the event his motion to quash the indictment was denied or overruled, and that was to employ Alexander. However, he was unable to obtain Alexander's legal services because Alexander had a previously scheduled trial commitment for April 3rd, which was the date appellant's trial was scheduled to commence. Thus, Alexander was in no position to represent appellant. Alexander himself contacted the trial judge, to no avail. I find that appellant filed his motion for continuance at the next and most opportune time.

It has long been the law of this State that an accused should be afforded a fair opportunity and a reasonable period of time in which to employ counsel of his choice, *Henderson v. State*, 137 Tex.Cr.R. 18, 127 S.W.2d 902, 127 S.W.2d 903 (1939), and failure to afford the accused such opportunity and reasonable time in which to obtain counsel of his choice may constitute reversible error. *Stroebel v. State*, supra. Compare *Ex parte Clear*, 573 S.W.2d 224 (Tex. Cr.App.1978), and *Ex parte Masching*, 41 Cal.2d 530, 261 P.2d 251 (1953).

This, however, does not mean that an accused's right to select his own counsel can be insisted upon so as to obstruct the orderly and fair administration of justice, because such must never occur. *Brown v. State*, 464 S.W.2d 134 (Tex.Cr.App.1971). Thus, if a defendant does not give the trial judge timely notice that counsel of his choice will not be able to attend the trial, the trial judge may, in the exercise of his sound discretion, do what is reasonably necessary to meet the situation, provided that whatever he does is done in accordance with the law. *United States v. Bentvena*, 319 F.2d 916 (2nd Cir.1963).

I quickly point out that in this instance appellant did not delay until the day of trial to inform the trial judge of the scheduling conflict Alexander, his counsel of choice, had. The uncontroverted statements of appellant reflect that within a reasonable period of time after the trial judge had denied his motion to quash the indictment, appellant did what he had earlier told the trial judge he was going to do, and that was to contact and employ Alexander for trial purposes. Unfortunately, Alexander was unable to accommodate appellant because had he undertaken to represent appellant this would have created a conflict with another

trial setting that Alexander then had. Alexander himself telephoned the trial judge and related to the judge his scheduling problem, but to no avail. I find that appellant did not show a lack of diligence in attempting to secure counsel of his choice within a reasonable period of time after the pre-trial hearing was held on March 22nd, and before April 3rd.

I also observe that there is not anything in the record which reflects or indicates that had the trial judge granted appellant's sworn first motion for continuance, and continued the cause for a reasonable period of time in order for appellant to obtain the legal services of Alexander or some other attorney, such would have caused a disruption of the court's business or affected the administration of justice. I further observe that the case was neither complicated, involved, or intricate; thus, effective counsel would not have needed a great deal of time to prepare for trial.

The State did not establish that appellant affirmatively waived his right to have the assistance of counsel at his trial. Appellant's fifth ground of error should be sustained. The majority, however, disagrees.

The main thing that I find wrong with the majority opinion is that it has misplaced the burden of proof that must be met before it can be said that the appellant has voluntarily, intelligently, and knowingly waived his right to counsel at trial. As previously pointed out, the cases hold that this is a burden that the State, and not the defendant, has. The single argument that the majority uses in order to deny appellant relief is its conclusion that appellant was "manipulating the commencement of his trial to suit his convenience and pleasure," when he filed his motion for continuance. In light of what is before this Court, I strongly disagree with this conclusion because it is simply not so; appellant did not try to "manipulate" the commencement of the trial by filing the motion for continuance; instead, he was trying to show the trial judge that he did not want to be tried without counsel.

Probably the greatest weakness of the majority opinion actually lies in the one single authority it cites in support of its conclusion; *White v. State*, 496 S.W.2d 642 (Tex.Cr.App.1973). However, if one will take the time to read *White v. State*, supra, he will easily see that it does not support the majority's conclusion that appellant attempted to "manipulate" the trial through the filing of his motion for continuance. In *White*, the defendant did not claim that she was forced to trial without counsel, as here; instead, the defendant in *White v. State*, supra, claimed on appeal that she needed a continuance because her trial counsel had not had enough time to prepare for the trial. Under the facts of that case, this Court correctly held that the trial court did not err in denying the motion for continuance.

For all of the above reasons, the majority errs in not sustaining appellant's fifth ground of error. I respectfully dissent.