In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00233-CR

                                                ______________________________

 

 

                                     RICKY GILMORE,
SR., Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 349th
Judicial District Court

                                                           Houston County, Texas

                                                         Trial Court
No. 09CR-076

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss








                                                                   O P I N I O N

 

            The January
2009 anonymous tip that ultimately led to the conviction of Ricky Gilmore, Sr.,
in a Houston County[1] jury trial for
possession of a controlled substance with intent to deliver, came in a
telephone call to Houston County Deputy H. D. Gresham.  Without divulging how he or she had come by
the information, the tipster told Gresham that Gilmore had just left Trinity
County traveling to Houston County in a white Dodge truck and was concealing
drugs “in his ass.”  Gresham asked Deputy
Clayton Smith to accompany him in his attempt to locate Gilmore.  The deputies were aware that Gilmore had
outstanding child support warrants.  

            While
traveling down State Highway 19 toward Trinity County, Gresham and Smith
observed Gilmore, with whom they were acquainted, pass them traveling in the
opposite direction in a vehicle matching the description given by the
tipster.  The deputies stopped Gilmore
and arrested him on the child support warrants. 
The deputies conducted a pat down search of Gilmore and an inventory
search of the vehicle, but found no drugs or drug paraphernalia.  They did find $364.00 cash in Gilmore’s
possession.  

            At
the Houston County jail, Smith conducted a visual body-cavity search of Gilmore,
requiring Gilmore to remove all his clothing, lift his scrotum, and spread his
butt cheeks.  The officers discovered,
under Gilmore’s scrotum and partially concealed in Gilmore’s anus, a bag
containing a substance later identified as containing forty-one grams of
cocaine, including adulterants.  

            The
anonymous caller then called Gresham again and stated that Gilmore had been
selling drugs from his residence.  The
deputies obtained a search warrant for the residence and there discovered
glassine bags and two sets of digital scales. 


            The jury
found Gilmore guilty and assessed punishment at seventy-five years’
imprisonment.  The trial court sentenced
Gilmore consistent with the jury’s assessment. 
Gilmore appeals, raising four issues. 
We affirm the judgment of the trial court, because we hold that (1) the
visual body-cavity search of Gilmore’s person was reasonable, (2) probable
cause supported the search of Gilmore’s residence, (3) any error in refusing
Gilmore a continuance was not preserved, and (4) insufficient causal connection
was established to permit impeaching Gresham with federal charges.

(1)        The Visual Body-Cavity Search of Gilmore’s
Person Was Reasonable

 

            Gilmore
argues that the trial court erred in denying his motion to suppress evidence
seized during the visual body-cavity search because the deputies lacked
reasonable suspicion to conduct the search incident to arrest.  The State argues the balancing of the four
factors of Bell v. Wolfish, 441 U.S.
520, 559 (1979), indicates the search was reasonable.

            In general, a
search incident to arrest authorizes the police to conduct “a full search of
the person.”  United States v. Robinson, 414 U.S. 218, 236 (1973).  “But Robinson did not do away with the
requirement that all searches be reasonable, nor did it hold that all searches
incident to arrest, no matter how intrusive, are per se reasonable.”  McGee
v. State, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).  Whether a search is reasonable “requires a
balancing of the need for the particular search against the invasion of
personal rights that the search entails.” 
Bell, 441 U.S. at 559 (concluding
searches in jails and prisons can be conducted with less than probable cause).

            We are to
consider four factors in determining the reasonableness of the search:  (1) the scope of the particular intrusion, (2)
the manner in which it is conducted, (3) the justification for initiating it,
and (4) the place in which it is conducted. 
Id.; see McGee, 105 S.W.3d at
616.  Each analysis will depend on the
particular facts and circumstances of the underlying case, and no one factor is
determinative.  McGee, 105 S.W.3d at 616.

            (a)        The
Scope of the Intrusion Weighs Against Reasonableness

 

            The search
of Gilmore’s person conducted in this case is sometimes called a strip search
in the briefs of the parties and at trial. 
But it is properly called a “visual body-cavity search.”

The
term “strip search” generally refers to an inspection of a naked person,
without any scrutiny of the person’s cavities. 
A “visual body-cavity search” includes a visual inspection of a person’s
anal or genital areas.  A “manual
body-cavity search” involves some degree of probing or touching a person’s body
cavities.

 

Id. at 615.  Because the search at issue included a visual
inspection of Gilmore’s anal and genital areas, the search was a visual
body-cavity search.  The Texas Court of
Criminal Appeals has noted “[v]isual body-cavity searches are among the most
intrusive of searches” and their intrusiveness “cannot be overstated.”  Id. at
616 (quoting Kennedy v. Los Angeles
Police Dep’t, 901 F.2d 702, 711 (9th Cir. 1989)).  Visual body-cavity searches can be demeaning,
dehumanizing, terrifying, and humiliating. 
Id.  This factor clearly weighs against the
reasonableness of the search and requires the other factors, on balance, to
justify the search.

            (b)        How the Search Was Conducted Favors
Reasonableness

 

            The record
indicates the visual body-cavity search was conducted in a professional manner
with no more intrusion than necessary. 
The deputies escorted Gilmore to a room in the book-in area of the
Houston County jail, which the deputies referred to as the “strip-search area.”  Once there, the deputies ordered Gilmore to
remove his clothes and then inspected the clothes.  The deputies then advised Gilmore to “turn
and face [the deputies] and lift his scrotum and turn and spread his butt cheeks
. . . .”  When Smith observed “something
being concealed,” he asked Gilmore to remove the item; Gilmore eventually
complied.  There are no allegations the
deputies required Gilmore to remain exposed for unreasonable durations,
subjected Gilmore to endure degradation or ridicule, or conducted the search
based on any abusive or unprofessional motivation on the part of the deputies.  This factor weighs in favor of
reasonableness.

            (c)        The
Justification for the Search Favors Reasonableness

 

            The third
factor concerns the justification the deputies had for the search.  That involves the level of suspicion the
deputies had that a search would yield either contraband or a weapon.  Although a pretrial detainee has a diminished
expectation of privacy while at a jail—the location of this search—there is
some debate about the appropriate level of suspicion for such a search.

            Gilmore
argues that the trial court erred in denying his motion to suppress evidence
seized during the visual body-cavity search because the deputies lacked
reasonable suspicion to conduct the search. 
He explains that Article 38.23 of the Texas Code of Criminal Procedure requires
the exclusion of the evidence because (a) the lack of reasonable suspicion
violated the United States Constitution, (b) the lack of reasonable suspicion
violated the Houston County jail’s search policy,[2]
and (c) the lack of reasonable suspicion violated the Texas Administrative
Code.[3]

            In Bell, the United States Supreme Court
announced, due to the “significant and legitimate security interests” of penal
institutions, visual body-cavity searches may be conducted based on less than
probable cause.  Bell, 441 U.S. at 560.  The
Court, though, failed to specify what level of suspicion is necessary, if any.  The Texas Court of Criminal Appeals,
similarly, has yet to specify what level of suspicion, if any, is required for
visual body-cavity searches.  McGee, 105 S.W.3d at 617.  McGee upheld
a visual body-cavity search conducted in a fire station, not a jail, as a
search incident to arrest but, in deciding the search was reasonable, noted the
police had probable cause.  Id. 
McGee endorsed the four-part
weighing test set out by Bell and
explicitly stated that no single factor of the test is determinative.  Id.
at 616.  If, as is stated by McGee, a single factor cannot be
determinative, then no particular level of suspicion, not even reasonable
suspicion, can be said to be an absolute requirement to validate a search.

            Notwithstanding
the lack of an absolute standard requiring reasonable suspicion, we believe the
deputies had reasonable suspicion to search Gilmore.  We review the trial court’s decision on a
motion to suppress evidence by applying a bifurcated standard of review
deferring to the trial court’s determination of historical facts that depend on
credibility, but reviewing de novo the trial court’s application of the law.  Wiede v.
State, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); see Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The trial court’s evidentiary ruling “will be
upheld on appeal if it is correct on any theory of law that finds support in
the record.”  Gonzalez v. State, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).  Generally, we review de novo determinations of
reasonable suspicion and probable cause after granting deference to the trial
court’s determination of historical facts.  Guzman,
955 S.W.2d at 87.

            An anonymous
telephone call rarely will, standing alone, establish the requisite level of
reasonable suspicion because “an anonymous tip alone seldom demonstrates the
informant’s basis of knowledge or veracity.” 
Alabama v. White, 496 U.S.
325, 329 (1990); see Florida v. J.L.,
529 U.S. 266, 270 (2000).  Only an
anonymous tip, suitably corroborated or otherwise exhibiting sufficient indicia
of reliability, will provide reasonable suspicion for a temporary or
investigative detention.  See J.L., 529 U.S. at 270.  Police can provide other indicia of
reliability by independent corroboration of the informant’s information.  See Illinois
v. Gates, 462 U.S. 213, 236 (1983); Cassias
v. State, 719 S.W.2d 585, 590 (Tex. Crim. App. 1986) (op. on reh’g). “Corroboration
by the police officer means that, in light of the circumstances, the officer
confirms enough facts to reasonably conclude that the information provided is
reliable . . . .”  Jones v. State, 949 S.W.2d 509, 515 (Tex. App.—Fort Worth 1997, no writ).

            In general,
corroboration of mere innocent details is insufficient to corroborate an
anonymous tip.  Davis v. State, 144 S.W.3d 192, 199–200 (Tex. App.—Fort Worth 2004,
pet. ref’d).  The independent
corroboration by the police must establish that the anonymous tip is “reliable
in its assertion of illegality, not just in its tendency to identify a
determinate person.”  J.L., 529 U.S. at 271.  “[T]he corroboration of details that are
easily obtainable at the time the information is provided, and which do not
indicate criminal activity, will not lend support to the tip.”  Stewart
v. State, 22 S.W.3d 646, 648 (Tex. App.—Austin 2000, pet. ref’d); see J.L., 529 U.S. at 272; Johnson v. State, 146 S.W.3d 719, 721 (Tex.
App.—Texarkana 2004, no pet.); Davis v.
State, 989 S.W.2d 859, 861 (Tex. App.—Austin 1999, pet. ref’d); Parish v. State, 939 S.W.2d 201, 204
(Tex. App.—Austin 1997, no pet.); Correll
v. State, 696 S.W.2d 297, 299 (Tex. App.—Fort Worth 1985, writ ref’d).  The United States Supreme Court, though, has
recognized an exception when the anonymous tip correctly predicts future
movements of the suspect.  See White, 496 U.S. at 332; Gates, 462 U.S. at 245.  The Court reasoned:

Because
only a small number of people are generally privy to an individual’s itinerary,
it is reasonable for police to believe that a person with access to such
information is likely to also have access to reliable information about that individual’s
illegal activities.

 

White, 496 U.S. at
332.  Both Gates and White, however,
involved unusual travel itineraries. 
When the travel itinerary is more commonplace, knowledge of a suspect’s
travel plans may not be sufficient.  See, e.g., Smith v. State, 58 S.W.3d 784, 793 (Tex. App.—Houston [14th Dist.]
2001, pet. ref’d) (finding no reasonable suspicion for various reasons,
including that travel was down “well traveled corridor”).  The question is whether, under the totality
of the circumstances, “an informant’s tip contains a range of details relating
not only to easily obtained facts and conditions existing at the time of the
tip, but also to future actions of third parties ordinarily not easily
predicted.”  Id. at 789 (citing Gates,
462 U.S. at 245).

            The
corroboration that Gilmore was traveling toward Houston County in a white Dodge
pickup truck was not sufficient, by itself, to create reasonable
suspicion.  The travel was down a well
traveled corridor, which was the usual route between Crockett and Trinity, and
the tip merely predicted Gilmore’s current course of travel, not his future
travel itinerary.  The United States
Supreme Court has noted:

An
accurate description of a subject’s readily observable location and appearance
is of course reliable in this limited sense:  It will help the police correctly identify the
person whom the tipster means to accuse.  Such a tip, however, does not show that the
tipster has knowledge of concealed criminal activity.  The reasonable suspicion here at issue
requires that a tip be reliable in its assertion of illegality, not just in its
tendency to identify a determinate person.

 

J.L., 529 U.S. at
272 (citations omitted).  At trial,
Gresham testified the anonymous caller advised him “Ricky Gilmore had just left
Trinity County . . . .”  As made clear in
Gresham’s trial testimony,[4]
the anonymous tip in this case did not predict Gilmore’s future travel plans,
but only described Gilmore’s current travel plans.  As such, the exception for correctly
predicting future travel plans does not apply. 
Although the corroboration is still relevant to the anonymous caller’s
reliability, it is not sufficient corroboration by itself.

            The corroboration
that Gilmore was traveling toward Houston County in a white Dodge truck was not
the only indicia of reliability known to the deputies.  Although the deputies knew Gilmore had
previously been arrested for drug offenses, it is not clear whether they knew
if Gilmore had any prior convictions.[5]  The deputies had also received a tip from a
named informant that Gilmore was selling drugs. 
Several weeks previously, another deputy had received a statement from a
named informant who stated, “I go to the trailer behind Jan’s to purchase crack
cocaine.  I gave the money to Jesse
McKnight and he goes to the back door to get the dope from Ricky Gilmore.  This occurs in Crockett, Texas.”  

            While none
of the information known to the deputies would have been sufficient by itself
to create reasonable suspicion, the information was sufficient when considered
together.  We conclude the anonymous tip,
corroborated by Gilmore’s current course of travel, considered with the tip
from a named informant and Gilmore’s arrest record was sufficient under the
totality of the circumstances to create reasonable suspicion.

            The
justification for the search favors reasonableness.

 

            (d)        Where
the Search Was Conducted Favors Reasonableness

 

            The Texas
Court of Criminal Appeals has held “the search must be conducted in a hygienic
environment where there is no risk of infection.”  McGee,
105 S.W.3d at 617.  The search was
conducted in a room in the book-in area of the Houston County jail which the deputies
referred to as the “strip-search area.”  Although
the search was not conducted in a location as sterile as a hospital, the search
did not involve any probing of body cavities. 
In McGee, the Texas Court of
Criminal Appeals suggested that, when there is no penetration of the body, a
less sterile environment may be satisfactory. 
This is not to say visual body-cavity searches may be conducted in
unsanitary conditions, but merely that the location does not have to be as
sterile as a hospital when no penetration is involved.  We conclude the place where the search was
conducted was reasonable.

            Three of the
four factors favor a finding of reasonableness. 
Like the situation in McGee,
the only factor that weighs against reasonableness is the intrusiveness of the
search.  Balancing the need for the
particular search against the invasion of personal rights, we conclude that the
visual body-cavity search was reasonable.

            We overrule
this contention.

 

(2)        Probable Cause Supported the Warrant to Search
Gilmore’s Residence

 

            Gilmore also
contends that the trial court erred in denying his motion to suppress evidence
discovered during the search of his residence. 
The Fourth Amendment to the United States Constitution and Article I,
Section 9 of the Texas Constitution guarantee the right of the people to be
secure against unreasonable searches of their persons, houses, papers, and
effects.  U.S. Const. amend. IV; Tex.
Const. art. I, § 9.  After
discovering the cocaine during the visual body-cavity search, the deputies
obtained a search warrant authorizing a search of Gilmore’s residence.  They discovered glassine bags and electronic
scales.  Gilmore complains that the
affidavit used to apply for the warrant fails to allege sufficient facts to
establish probable cause.

            As an
exception to the general rule articulated in Guzman, the issuing magistrate’s decision to grant the search
warrant should be reviewed with a deferential standard of review.  Swearingen
v. State, 143 S.W.3d 808, 811 (Tex.
Crim. App. 2004).  Great deference should
be paid to a magistrate’s determination of probable cause, and warrants should
not thereafter be invalidated through “hypertechnical” interpretation of their supporting
affidavits.  Gates, 462 U.S. at 236. 
Affidavits for arrest or search warrants should be interpreted in a
commonsense and realistic manner.  Gibbs v. State, 819 S.W.2d 821, 830
(Tex. Crim. App. 1991).  Granting great
deference to the issuing magistrate’s determination, the appellate court will
sustain the issuance of the warrant if the magistrate had a substantial basis
for concluding that a search would uncover evidence of wrongdoing.  Gates,
462 U.S. at 236; see Swearingen, 143
S.W.3d at 811.

            An
application for a search warrant must be supported by an affidavit setting
forth facts establishing probable cause.  Tex.
Code Crim. Proc. Ann. art.
1.06 (Vernon 2005), art. 18.01(b) (Vernon Supp. 2009).  The determination of the sufficiency of an
arrest or search warrant is limited to the four corners of the affidavit.  Oubre
v. State, 542 S.W.2d 875, 877 (Tex. Crim. App. 1976); Burke v. State, 27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref’d).  The facts contained in the probable cause
affidavit must be sufficient to justify a conclusion that the object of the
search is probably on the premises at the time the warrant is issued.  State
v. Delagarza, 158 S.W.3d 25, 26 (Tex. App.—Austin 2005, no pet.).  The warrant must contain “sufficient
information” to allow the issuing magistrate to determine probable cause
because the magistrate’s action “cannot be a mere ratification of the bare
conclusions of others.”  Gates, 462 U.S. at 239.

            Because
probable cause is determined from the “four corners” of the affidavit alone,
there are no credibility choices to be made by the trial court in determining
whether the issuing magistrate had a substantial basis to conclude that probable
cause existed.  Burke, 27 S.W.3d at 654. 
Thus, we review de novo the trial court’s ruling on the motion to
suppress.  Id.  

            The search of
Gilmore’s residence cannot be justified merely on the fact that Gilmore was
found to possess drugs or that Gilmore was a drug dealer.  “[I]t is not enough to simply conclude that
contraband is in one’s home merely because the suspect has a home.”  Taylor
v. State, 54 S.W.3d 21, 27 (Tex. App.—Amarillo 2001, no pet.) (finding
warrant for search of suspect’s residence invalid); see State v. Ozuna, 88 S.W.3d 307, 313 (Tex. App.—San Antonio 2002,
pet. ref’d).  There must be probable
cause that drugs would be found at the residence.

            The deputies
had information which indicated drugs would be found at Gilmore’s
residence.  The probable cause affidavit
in this case provides as follows, in pertinent part:

A.        On January 14, 2008[,] Your Affiant
received information from an anonymous source who stated that Ricky Gilmore was
traveling from Trinity, TX to Crockett, TX on State Hwy 19 driving a white
1990s model Dodge truck.  The source
stated that the subject was going to have in his possession a quantity of
cocaine that he had picked up in Trinity, TX. 
The source also explained to your affiant that Gilmore would be carrying
the cocaine between his scrotum and anus.

 

            . . . .

 

C.        Your Affiant located a white Dodge
pick-up truck traveling northbound on State Hwy 19.  The truck was a 1996 Dodge displaying Texas
license plate 24PDX8.  Deputy Smith
positively identified that Ricky Lane Gilmore was the driver of the truck.

 

            . . . .

 

I.          Once at the jail[,] a strip search was
conducted which is common operating procedure for suspects that have a prior
arrest record for narcotics and for person[s] suspected of concealing narcotics
on there [sic] person.  During the strip
search[,] Deputy Smith located a foreign object underneath Gilmore’s scrotum
and between his anus.  When asked to
remove the object[,] Gilmore hesitated but then complied and removed a clear
plastic sandwich type bag that contained a white powdery substance believed to
be cocaine.

 

J.          A field test of the substance showed
positive for cocaine and the unofficial weight of the substance and the
packaging is approximately forty-two grams.

 

K.        At approximately 11:45AM[,] your affiant
received a telephone call from the anonymous source again who wanted to know if
Gilmore had been caught.  The source
stated that Gilmore had bragged to him about making ten thousand dollars a week
from the sales of cocaine, and the informant stated that Gilmore was known to
keep illegal narcotics and United States currency derived from the sale of
narcotics on his property, and inside his residence located at 110 Cypress
street in Crockett, TX.

 

L.         On December 29, 2008[,] Deputy
Massingill received a hand written witness statement from Emil James Moser[,] a
thirty eight year old male who had information about Gilmore.  In Moser[’]s statement he writes[,] “I go to
the trailer behind Jan’s grocery to purchase crack cocaine.  I give the money to Jesse McKnight and he
goes to the back door to get the dope from Ricky Gilmore.  This occurs in Crockett, TX.

 

M.        Your Affiant has known Gilmore to sell
cocaine and has been selling cocaine for several years. Gilmore’s criminal
history shows arrest for Manufacture/ Delivery/Possession of Controlled
Substance less than 28 grams, Cocaine possession, Possession of Controlled
substance penalty group 1 less than one gram, and driving while license
invalid.

 

Thus, the probable cause affidavit includes two tips, one
from an anonymous informant and one from a named informant, that drugs would be
found at Gilmore’s residence.

            Because of
the potential unreliability of statements given by anonymous informants, the
United States Supreme Court developed the Aguilar-Spinelli
analysis, which required a two- pronged test asking whether (1) the informant
obtained the relevant information in a reliable manner, and (2) the informant
was reliable.  See Gates, 462 U.S. at 230.  In
response to “hypertechnical” interpretations of the Aguilar-Spinelli analysis, the United States Supreme Court
subsequently relaxed the rigid standards in the Aguilar-Spinelli analysis to allow consideration of the totality of
the circumstances.  See id.  Because the focus of
inquiry is whether the statements are sufficiently reliable for a finding of
probable cause, a deficiency in one of the two factors of reliability of the
informant may not be fatal if the totality of the circumstances indicates
reliability.  Id.  The totality of the circumstances includes
the “veracity,” “reliability,” and the “basis of knowledge” of the informant
and the informant’s information.  “[A]n
informant’s ‘veracity,’ ‘reliability,’ and ‘basis of knowledge’ are all highly
relevant in determining the value of his report.”  Id.  Gates
“did not dispense with the two requirements used in the Aguilar-Spinelli test. 
Rather, the United States Supreme Court simply held that the prongs
should not be applied too rigorously, and the entire affidavit should be
examined to determine whether, as a whole, probable cause is established.”  Ware v.
State, 724 S.W.2d 38, 40 (Tex. Crim. App. 1986).

            There
are a number of concerns with the probable cause affidavit in this case.  The anonymous tip fails to provide much
information on either the veracity or reliability of the informant.  The discovery of drugs during the visual
body-cavity search indicates the source is reliable, but does not alleviate the
concerns about the basis of knowledge of the informant.  The tip fails to provide any information
about how the informant obtained the information.  The anonymous tip merely states, “Gilmore was
known to keep illegal narcotics . . . inside his residence.”  The tip fails to specify how the anonymous
source learned the narcotics were at the residence.  The phrase “was known” is clearly
insufficient, by itself, to establish the basis of knowledge of the anonymous
call.

            The tip from
the named informant also lacks any information concerning the basis of the knowledge.[6]  The named informant stated, “I give the money
to Jesse McKnight and he goes to the back door to get the dope from Ricky
Gilmore.”  This tip fails to specify how
the named informant knew the drugs were kept at Gilmore’s residence.  Did the named informant personally observe
McKnight go to Gilmore’s residence, or did the named informant merely presume
that is where McKnight went?  A named
informant’s declarations against the informant’s own penal interest may be used
to corroborate the reliability of information in an affidavit.  Abercrombie
v. State, 528 S.W.2d 578, 583–85 (Tex. Crim. App. 1974) (op. on reh’g); Barton v. State, 962 S.W.2d 132, 143
(Tex. App.—Beaumont 1997, pet. ref’d). 
Although the named informant’s admissions against the informant’s own
penal interests may corroborate the named informant’s reliability, the named
informant’s veracity is still suspect. 
The deputies lacked any information about how the named informant knew
drugs were kept at Gilmore’s residence.

            Despite
these shortcomings, the tip from the named informant provides additional
indicia of reliability to the anonymous call. 
In addition, the deputies knew Gilmore had previously been arrested for
drug offenses and had been found in possession of cocaine only a few hours
earlier.  We are to afford great
deference to the issuing magistrate. 
Whether we would have found probable cause under the facts presented in
the probable cause affidavit, our review is concerned only with whether there
is a substantial basis for the issuing magistrate to find probable cause
existed.  While the anonymous tip was
deficient concerning both veracity and reliability, these deficiencies were
compensated for by other indicia of reliability.  The deputies had received a tip from a named
informant that was consistent with the anonymous tip.  In addition, the deputies knew that Gilmore
had been arrested for drug offenses in the past.  Finally, the first tip from the anonymous
tipster had proven to be correct by the visual body-cavity search.  Under the totality of the circumstances, the
anonymous tip, considered with the other indicia of reliability, was sufficient
to provide the issuing magistrate a substantial basis to conclude probable
cause existed.  We overrule this contention.

(3)        Any Error in Refusing Gilmore a
Continuance Was Not Preserved

 

            Gilmore also
argues that the trial court erred in denying a motion for continuance made by
an attorney his family had retained a week before trial.  The motion was presented orally to the trial
court the day of trial, immediately preceding voir dire.  The State responds that the trial court did
not abuse its discretion.

            First,
the error, if any, is not preserved for our review.  A motion for continuance made during trial
that is not in writing and is not sworn to will not preserve error if it is
denied.  Anderson v. State, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009); Matamoros v. State, 901 S.W.2d 470, 478
(Tex. Crim. App. 1995); see Tex. Code Crim. Proc. Ann. arts. 29.03,
29.08 (Vernon 2006).  The record in this
case does not contain any written motion requesting a continuance so that
Gilmore’s newly retained counsel could represent him.[7]  The request for a continuance made by Gilmore’s
newly retained counsel was made orally to the trial court.  The issue raised by Gilmore on appeal is not
preserved for appellate review. 

            Even if
error had been preserved, Gilmore has failed to show the trial court abused its
discretion.  A criminal defendant has a
right to secure counsel of his or her own choice.  United
States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006); Wheat v. United States, 486 U.S. 153, 159 (1988); Powell v. Alabama, 287 U.S. 45
(1932).  The United States Supreme Court,
though, specifically acknowledged the right “is circumscribed in several
important respects.” Gonzalez-Lopez,
548 U.S. at 144 (quoting Wheat, 486
U.S. at 159).  A defendant cannot wait
until the day of trial to demand different counsel or to request that counsel be
dismissed so that he or she may retain other counsel.  Neal v.
State, 689 S.W.2d 420, 427 (Tex. Crim. App. 1984); Ramirez v. State, No. 2-09-136-CR, 2010 Tex. App. LEXIS 3663, at *20–21
(Tex. App.—Fort Worth May 13, 2010, no pet. h.) (mem. op., not designated
for publication).

            The Texas
Court of Criminal Appeals has announced several factors which trial courts may
consider in deciding whether to grant a continuance, including:

(1)
the length of the delay requested, (2) whether other continuances were
requested and whether they were denied or granted, (3) the length of time in
which the accused’s counsel had to prepare for trial, (4) whether another
competent attorney was prepared to try the case, (5) the balanced convenience
or inconvenience to the witnesses, the opposing counsel, and the trial court,
(6) whether the delay is for legitimate or contrived reasons, (7) whether
the case was complex or simple, (8) whether a denial of the motion resulted in
some identifiable harm to the defendant, (9) the quality of legal
representation actually provided.

 

Ex parte Windham,
634 S.W.2d 718, 720 (Tex. Crim. App. 1982); see
Rosales v. State, 841 S.W.2d 368, 375 (Tex. Crim. App. 1992).  “In addition to all of these factors, it must
be remembered that the public interest in the fair and orderly administration
of justice may be greater than a defendant’s right to have counsel of his
choice.”  Id.  Although the trial court
had scheduled the trial date approximately three months before the date of
trial, Gilmore’s counsel of choice was not retained until the week before
trial.  Gilmore’s newly retained counsel
first orally requested a ninety-day continuance.  After the trial court denied the substitution
of counsel, Gilmore’s newly retained counsel orally requested a sixty-day
continuance, which the trial court also denied. 
The State represented to the court that it did not have any other cases
ready for trial on that day.  Even if
this issue had been preserved for review, the trial court did not abuse its
discretion.

            We overrule
this contention.

 

(4)        Insufficient Causal Connection Was
Established to Permit Impeaching Gresham with Federal Charges

 

            Gilmore also
asserts the trial court erred in refusing to permit Gilmore to impeach Gresham
based on pending criminal charges that had been filed against Gresham in federal
court.  Gresham received the initial
anonymous tip and assisted in the investigation of Gilmore.  Gresham had been charged with a violation of
civil rights and entered a plea agreement in which he agreed to plead guilty to
simple assault.  Gresham was awaiting
sentencing on the plea agreement.  The
trial court refused to permit the impeachment evidence to be introduced.  

            Gilmore
cites Maxwell v. State, 48 S.W.3d
196, 200 (Tex. Crim. App. 2001), overruled
to the extent it conflicts with Carpenter v. State, 979 S.W.2d 633, 634
(Tex. Crim. App. 1998), by Irby v. State,
No. PD-1097-08, 2010 Tex. Crim. App. LEXIS 725 (Tex. Crim. App. June 16, 2010),
in support of his argument.[8]  The State argues Gilmore failed to establish
a causal connection between the pending charges in federal court and a bias or
motive to testify favorably for the State.

            Impeachment
based on proof of circumstances showing bias is permitted unless the probative
value of the evidence is substantially outweighed by the danger of unfair
prejudice.  See Tex. R. Evid. 403,
613; see also Davis v. Alaska, 415 U.S. 308 (1974) (right to confront witnesses
includes right to cross-examine witnesses concerning their possible bias,
self-interest, or motives in testifying); Hammer
v. State, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009).  The Texas Court of Criminal Appeals has held
that the existence of an express agreement between the witness and the State is
not determinative of whether pending charges reveal bias.  Carroll
v. State, 916 S.W.2d 494, 500 (Tex. Crim. App. 1996).  The proponent of the impeachment evidence,
however, “must establish some causal connection or logical relationship between
the pending charges and the witness’ ‘vulnerable relationship’ or potential
bias or prejudice for the State, or testimony at trial.”  Carpenter,
979 S.W.2d at 634.  The facts in Carpenter were similar to this
case.  The Texas Court of Criminal
Appeals held there was no causal connection between the existence of pending
federal charges and the witness’ testimony at trial.  As in Carpenter,
Gilmore has failed to establish a causal connection between the pending federal
charges and Gresham’s testimony at trial. 
At trial, Gilmore argued, because Gresham’s presentence investigation report
had not been completed, Gresham had a motive to be biased toward the
State.  This argument is the equivalent
of the mere existence of federal charges and fails to establish a nexus or causal
connection indicating bias.  The trial
court did not err in refusing to permit the impeachment of Gresham.

            For the
reasons stated, we affirm the judgment of the trial court.

 

 

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          July
6, 2010

Date Decided:             August
12, 2010

 

Publish











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann.
§ 73.001 (Vernon 2005).  We are unaware
of any conflict between precedent of the Twelfth Court of Appeals and that of
this Court on any relevant issue.  See Tex.
R. App. P. 41.3.





[2]The
search policy of the Houston County jail states that an unclothed search is “[a]
search where reasonable suspicion exists to justify the search.”  According to Gilmore, the search should have
been suppressed because the deputies lacked specific, articulable facts that
Gilmore possessed a controlled substance. 
Gilmore’s argument relies on the definition of “reasonable suspicion”
that applies to Fourth Amendment purposes, rather than the definition of the
term in the policy.  The policy, though,
assigned a different definition to the term “reasonable suspicion” than the
definition of the term for the purpose of a Fourth Amendment analysis.  Section 1.08 of the policy provides
reasonable suspicion exists if “the individual’s criminal history shows
previous arrests for drug offense . . . .” 
The record reflects that the deputies were aware Gilmore had been
previously arrested for drug offenses.  

                A
departmental policy, however, is merely a guide to assist the employees of the
department; it is not a law or a regulation. 
A policy is “a definite course or method of action selected from among
alternatives and in light of given conditions to guide and determine present
and future actions.”  Merriam Webster’s Collegiate
Dictionary  960 (11th ed. 2003).  Although a policy might have relevance in
some situations, it has no relevance to the admissibility of evidence under
Article 38.23.  It is a guide to aid the
department’s employees in complying with the department’s preferred course of
action.  While often used to aid a
department in complying with the law, a policy is still nothing more than a
guide.  A policy does not modify or
expand the law.  A policy is not a law of
the State of Texas under Article 38.23.

 





[3]The
Texas Commission on Jail Standards has issued a regulation concerning searches
on admittance.  Section 265.2 of
Title 37 of the Texas Administrative Code provides as follows in pertinent
part:

 

(a)           A thorough pat or frisk search shall
be conducted on each inmate upon entry into the facility and prior to booking.

(b)           When facility personnel reasonably
believe it to be necessary, inmates should undergo a thorough strip search for
weapons and contraband which may pose a threat to the security or safety of the
facility . . . .

 

37 Tex.
Admin. Code § 265.2 (2010). 
Gilmore argues, because the deputies lacked reasonable suspicion, they
could not “reasonably believe” a search was necessary.  Thus, according to Gilmore, the search
violated the Texas Administrative Code and the prohibition contained in Article
38.23 applies to the search.

                In
general, a valid regulation adopted by an administrative agency in accordance
with its delegated powers has the force and effect of a legislative enactment.  Ne.
Tarrant County Water Auth. v. Bd. of Water Eng’r, 367 S.W.2d 720, 723 (Tex.
Civ. App.—Austin 1963, no writ); see
25–421 Dorsaneo, Texas Litigation
Guide § 421.02 (2010); B-R Dredging Co. v. Rodriguez, 564
S.W.2d 693, 696 (Tex. 1978).  However,
the issue of whether the general rule applies under the circumstances presented
in this case is not clear.  Neither
Gilmore nor the State have briefed whether the Texas Legislature contemplated
that Article 38.23 would apply to violations of agency regulations or whether “reasonably
believed” is consistent with or more expansive than reasonableness under the
Fourth Amendment.  Because the deputies
had reasonable suspicion, it is not necessary for us to decide this issue.





[4]The
testimony of the deputies at trial differed in a number of minor respects from
their testimony at the pretrial hearing. 
In reviewing a trial court’s decision concerning a motion to suppress,
we generally consider only evidence adduced at the suppression hearing, since
the ruling was based on that evidence, rather than evidence introduced later in
the trial.  Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).  When the legality of the seizure is relitigated
at trial, however, consideration of relevant trial testimony is appropriate in
our review.  Id.  In this case, the issue
was relitigated at trial and presented to the jury in the court’s charge.  Therefore, we will consider the testimony
introduced at trial in our analysis.

 





[5]A
person’s arrest record may be considered along with other specific, articulable
facts in determining whether reasonable suspicion exists.  See
Coleman v. State, 188 S.W.3d 708, 719 (Tex. App.—Tyler 2005, pet.
ref’d).  Of course, knowledge that
Gilmore had been convicted of prior drug offenses would be considerably more
persuasive.  





[6]The
tip from the named informant was made to the deputies several weeks before the
search of Gilmore’s residence.  It is
well established that a search warrant cannot be issued based on facts which
occurred at too remote a time.  See Garza
v. State, 120 Tex. Crim. 147, 48 S.W.2d 625, 626 (1932); Serrano v. State, 123 S.W.3d 53, 60
(Tex. App.—Austin 2003, pet. ref’d).  A
probable cause affidavit is “inadequate if it fails to disclose facts which
would enable the magistrate to ascertain from the affidavit that the event upon
which the probable cause was founded was not so remote as to render it
ineffective.”  Sherlock v. State, 632 S.W.2d 604, 608 (Tex. Crim. App. 1982)
(citing Garza, 48 S.W.2d at 627–28).  On the other hand, the issue of staleness
becomes less of a concern when the information known to the police shows a
continuing course of conduct.  See Bernard v. State, 807 S.W.2d 359,
365 (Tex. App.—Houston [14th Dist.] 1991, no pet.); see also Bills v. State, 855 S.W.2d 79, 82 (Tex. App.—Fort
Worth  1993, no pet.).  We conclude the tips in this case are
sufficient to conclude Gilmore was engaging in a continuing course of
conduct.  Therefore, the concerns about
the tip from the named informant being stale are alleviated.





[7]The
record contains a written motion for continuance filed by Gilmore’s appointed
counsel which requests a continuance because Gilmore had ceased discussing the
case with his appointed counsel on learning his family had retained another
attorney to represent him.  This motion,
though, does not request a continuance on behalf of the newly retained attorney.





[8]The
Texas Court of Criminal Appeals issued its opinion in Irby after the parties had filed their briefs in this case.