

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00197-CR

EDWIN ANTONIO OSORIO-LOPEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th District Court
Upshur County, Texas
Trial Court No. 17914

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion on Remand by Chief Justice Stevens

## MEMORANDUM OPINION ON REMAND

Following a retrospective competency trial, the trial court determined that Edwin Antonio Osorio-Lopez was competent at his trial of conviction.[1]  On appeal before this Court, we determined that the right to self-representation did not apply at the retrospective competency trial and that, as a result, the trial court erred in permitting Osorio-Lopez's attorney to withdraw without appointing new counsel to represent him at the retrospective competency trial.  *Osorio-Lopez v. State*, 629 S.W.3d 487, 493 (Tex. App.—Texarkana 2021), *rev'd*, 2022 WL 2335394 (Tex. Crim. App. June 29, 2022).  The Texas Court of Criminal Appeals held that this Court erred in reaching the self-representation issue because the trial court did not deny Osorio-Lopez's request to represent himself.  *Osorio-Lopez v. State*, 2022 WL 2335394, at *1.

Having so concluded, and having rejected Osorio-Lopez's statutory arguments, the Texas Court of Criminal Appeals remanded to this Court to determine "whether Appellant was competent to waive counsel, and if so, whether he did so voluntarily, knowingly, and intelligently."  The court continued, "Part of the latter inquiry requires examining the self-representation warnings.  If they are insufficient, we have suggested that error might be subject to a harm analysis."  *Id.* at *5 (citing *Williams v. State*, 252 S.W.3d 353, 358 n.38 (Tex. Crim. App. 2008)).

---

[1]Osorio-Lopez was convicted of evading arrest or detention with a vehicle and aggravated assault with a deadly weapon and was sentenced to concurrent ten-year and twenty-year sentences, respectively.  *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A), § 22.02 (Supp.).  In companion cause number 06-18-00198-CR, Osorio-Lopez appeals the trial court's retrospective competency determination in connection with his conviction of aggravated assault with a deadly weapon.

The parties have briefed these issues on remand. We find that (1) Osorio-Lopez was competent to waive his right to counsel, (2) Osorio-Lopez's waiver of the right to counsel was not knowing and intelligent, and (3) because Osorio-Lopez did not waive his right to counsel and proceeded to trial without counsel, prejudice is presumed. As a result, we conclude that Osorio-Lopez is entitled to a new retrospective competency trial.

## I.      Background

This case has a somewhat lengthy history, set out in opinions issued by this Court and the Texas Court of Criminal Appeals. We recount a somewhat abbreviated version of that history in this case for context.

When Osorio-Lopez appeared before the trial court in February 2018 for a bench trial on charges of evading arrest or detention with a vehicle and unauthorized use of a motor vehicle, the attorneys and Osorio-Lopez's interpreter expressed concern about his competency. Osorio-Lopez "had a seventh-grade education," had previously "experienced mental and emotional problems[,] and had been hospitalized in Wichita Falls following a period of incarceration in Fort Worth." *Osorio-Lopez*, 629 S.W.3d at 488. Tom Allen, Ph.D., examined Osorio-Lopez and "concluded that [he] was incompetent to stand trial." *Id.* Osorio-Lopez was hospitalized for further examination and treatment. *Id.* at 489. In August 2018, Osorio-Lopez was determined to be competent to stand trial. The psychiatrist who made that determination warned, though, that "[c]urrent medications [were] necessary to maintain the defendant's competence." *Id.*

Trial was scheduled for October 2018. Just a few days before trial, Osorio-Lopez's counsel filed a motion to withdraw because Osorio-Lopez could not communicate with him. *Id.*

3

Osorio-Lopez told the trial court that counsel would not be able to defend him "because of the issue he had the first time," referring to a problem he had with a Fort Worth attorney. *Id.* Although the trial court explained that this case had nothing to do with the Fort Worth case, Osorio-Lopez was adamant that "appointed counsel in the current case was the same attorney who represented him in Fort Worth." *Id.*

The trial court denied the motion to withdraw, and the case proceeded to jury selection. After the jury was selected, counsel for Osorio-Lopez "filed a verified motion for continuance outlining his inability to effectively communicate with Osorio-Lopez" and sought further examination by Allen to determine competency to stand trial.[2] *Id.* The trial court denied the motion, and the case proceeded to trial. On appeal, Osorio-Lopez argued, among other things, that the trial court erred in failing to continue the case to determine his competence. We agreed

[2]Counsel explained,

> As we got closer to jury selection and with communications I was able to do through [the interpreter,] it seemed to me that he was starting to have irrational thoughts, for instance, one the court is aware where he thought I represented him in another county in another matter and in his opinion had sold him out on a prior criminal matter. At jury selection[,] he presented written documentation to [the interpreter] that [the interpreter] was able to translate and get back to me last Thursday afternoon and was information he thought would be helpful in his defense. However, it appeared to me that he obviously had a lot of in my opinion irrational thoughts that he deemed were factual. And in furtherance of that[,] this morning he's made serious communications with me about things that he thinks or believes is happening down in the jail that would be horrific if true but to me seem to be irrational thoughts. . . . [H]e basically goes against every piece of advice I give him and gone as far as not signing essential documents like the application for community supervision because he thinks my advice is against his best interest. I am requesting a continuance in both cases to have . . . Dr. Tom Allen examine him again to deem whether or not he's competent because I feel like he's not competent to communicate with me to present a defense today.

*Osorio-Lopez*, 629 S.W.3d at 490 (alterations in original).

4

and abated the case to the trial court to determine if a retrospective competency hearing was feasible, and if so, to conduct such a hearing. *Id.* at 490.

At the November 5, 2019, hearing to determine whether a retrospective competency hearing was feasible, it was determined that Osorio-Lopez was not receiving his medication "that was necessary to make him competent."[3] At the request of all counsel, the trial court ordered Osorio-Lopez to undergo a competency examination to determine his competency to go forward with the retrospective competency hearing. Osorio-Lopez's trial counsel, who attended the hearing, stated that he had "a strong opinion of whether he was competent [at trial]." He further clarified with the trial court that his role was that of a fact witness. The trial court agreed. The trial court determined that, if Osorio-Lopez were competent, a retrospective competency trial would be feasible.

On November 20, 2019, and December 12, 2019, Allen examined Osorio-Lopez in the Upshur County Jail. The forensic examination lasted a combined one and one-half hours. Jon Kregel assisted Allen as an interpreter, and all communications were in Spanish. The December 18, 2019, report noted that Osorio-Lopez was born in 1997 in Honduras. It also stated that he was born in San Antonio. The report indicated that Osorio-Lopez's attention and memory were adequate. The report stated, "Ideation was paranoid, but he expressed beliefs that appeared cultural rather than delusional. For example, he says people control his life with 'black

---

[3]The State advised the trial court that "it [was] critical that he be given [his medication] in the jail." The prosecutor further represented that Osorio-Lopez had written her a letter approximately one week before the hearing stating that, while he was getting some medication, he was concerned that he was not receiving all his medications.

Maya' or 'white witchcraft' and even though he grew up believing in God he has been unable to control the 'black Maya influences.'"

As for fitness, Osorio-Lopez stated that he was arrested because "[he] stole a car." He also stated that he was charged with assault on a public servant. Osorio-Lopez indicated that he had an attorney and an appellate attorney. Allen concluded that Osorio-Lopez's capacity to understand the various roles of courtroom participants was "intact." Osorio-Lopez understood that the role of a defense attorney was "to defend a guilty person." He described the prosecutor as "the attorney on the other side" and the judge as the person who "decides the sentence." He ultimately concluded that Osorio-Lopez was competent to stand trial.[4]

Having determined that Osorio-Lopez was competent to stand trial, the trial court scheduled the retrospective competency hearing for February 25, 2020. Osorio-Lopez represented himself. The course of events leading to his self-representation were as follows:

THE COURT: Is Mr. Lopez ready to proceed?

[COUNSEL FOR OSORIO-LOPEZ]: Your Honor, can I -- can I briefly ask my client whether he wants to proceed with me or without me?

---

[4]Allen's report specifically stated that Osorio-Lopez was able to:

1. . . . factually and rationally understand the charges against him and . . . understand the potential consequences of pending criminal proceedings;

2. . . . disclose to counsel pertinent facts, events and states of mind at the current time or at the time of the conduct charged;

3. . . . engage in reasoned choice regarding legal strategies and options;

4. . . . understand the adversarial nature of the criminal proceedings against him;

5. . . . exhibit appropriate courtroom behavior; [and]

6. . . . testify on his own behalf.

THE COURT:  Yes, sir.

[COUNSEL FOR OSORIO-LOPEZ]:  Mr. Osorio-Lopez, will you please state your name?

[OSORIO-LOPEZ]:  *(Through interpreter)* My name is Edwin Antonio Lopez.

[COUNSEL FOR OSORIO-LOPEZ]:  You understand that I was your trial counsel?

[OSORIO-LOPEZ]:  Yes, I understand you were my present attorney but I had a change of attorney when he said the last court hearing when I was with the other attorney that he was going to leave when the other one returned.  So my attorney sent me the last letters.  And my attorney, doctor, judge told me that I was competent to be in court, to the rule of the court.

[COUNSEL FOR OSORIO-LOPEZ]:  Would you like for me to ask questions of the State's witness or are you wanting to ask the questions yourself?

[OSORIO-LOPEZ]:  I want to be my own judge, my own attorney to listen to the rules to see if I'm competent for that to return under oath.

[COUNSEL FOR OSORIO-LOPEZ]:  That's all the questions I have, Your Honor.

[THE STATE]:  Your Honor, may we approach just briefly with counsel, please?

THE COURT:  Yes.

. . . .

THE COURT:  Mr. Lopez, do you understand that you have the right to have an attorney present with you?

[OSORIO-LOPEZ]:  I lost him to see who I could -- I'm going to be representing myself.

THE COURT:  Do you want to represent yourself?

7

[OSORIO-LOPEZ]: Yes.

THE COURT: All right. That's fine.

The State then told the trial court that it "agreed to stipulate to the doctor's report." The State continued, "The most recent one was in December of 2019, which is referring to the proceedings here today that found Mr. Lopez competent to proceed in this competency trial."

The State called Jon Kregel, who was appointed by the trial court on previous occasions to translate for Osorio-Lopez, and Billy Wayne Byrd, the Upshur County District Attorney. Osorio-Lopez declined to cross-examine Kregel and did not call any witnesses on his own behalf. He briefly cross-examined Byrd:

> Q [By Osorio-Lopez] Are you competent to say in court that you were accusing me with Mr. Michael that was in Fort Worth when he had the last court in Fort Worth?
>
> A [By Kregel] I'm sorry, can you re-translate that again, the question. Did you say Michael?
>
> Q Are you competent here to stand here to say that you were competent to say that I had a hearing in Fort Worth, a hearing there in Fort Worth?
>
> A I can't respond of what may or may not have happened in Fort Worth, Texas. What the Court and what I was concerned with were the proceedings here in Upshur County, Texas.
>
> Q Okay. Thank you.

The court then announced that it had determined that Osorio-Lopez "was competent at his trial in which jury selection occurred on October the 8th and trial proceeded on October the 16th." Following the hearing, the trial court issued its February 25, 2020, order concluding that Osorio-Lopez was competent at the time of his October 2018 jury trial.

## II. Osorio-Lopez was Competent to Waive Counsel at the Retrospective Competency Trial

### A. Standard of Review and Applicable Law

Competency to waive the right to counsel is a mixed question of fact and law reviewed for an abuse of discretion. *Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010). The standard for determining competency to waive the right to counsel is the same standard used to determine competency to stand trial. *See Godinez v. Moran*, 509 U.S. 389, 399 (1993). Further, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Id.* (alteration in original).

"The Texas Legislature has adopted the constitutional standard for competency to stand trial in Article 46B.003(a) of the Texas Code of Criminal Procedure." *Turner v. State*, 422 S.W.3d 676, 689 (Tex. Crim. App. 2013). The statute states, "A person is incompetent to stand trial if the person does not have . . . sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding . . . or . . . a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a). Finally, "[a] defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(b). "These legislative criteria for competency contemplate a defendant who is at least minimally able to interact with his trial counsel in a 'reasonable and rational' way (even if they do not necessarily agree) in formulating decisions how most effectively to pursue his defense." *Turner*, 422 S.W.3d at 689–90.

**B.  Analysis**

We begin with the presumption that Osorio-Lopez was competent to waive his right to counsel at the retrospective competency hearing.  *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(b).  Osorio-Lopez relies on his statements in response to the trial court and his cross-examination of Byrd—as excerpted above—in support of his position that he rebutted the presumption of competence by a preponderance of the evidence.  He argues that his statements made during trial make it abundantly clear that he did not have "a rational as well as factual understanding of the proceedings against" him.  TEX. CODE CRIM. PROC. ANN. art. 46B.003(a)(2).

Yet, as recited earlier, Osorio-Lopez underwent a competency evaluation before the February 25, 2020, retrospective competency hearing.[5]  As a result of his evaluation, Allen concluded that Osorio-Lopez was competent to stand trial because at that time, he "demonstrate[d] an adequate factual and rational understanding of the proceedings against him and he [did] have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding if he so [chose]."  In addition, nobody suggested or claimed that Osorio-Lopez might not be sufficiently competent to waive his right to counsel, as had not been the case in earlier proceedings.[6]  On the record before us, we cannot conclude that the trial court abused

---

[5]The trial court determined, during the feasibility hearing on November 5, 2019, that Osorio-Lopez should be evaluated for competence before the trial court would proceed with a retrospective competency trial.  Thereafter, on November 11, 2019, counsel for Osorio-Lopez filed a motion suggesting incompetency and a request for examination, after which the court issued an order for examination regarding incompetency.

[6]The prior proceedings involved the question of whether Osorio-Lopez was competent to stand trial.

10

its discretion in implicitly determining that Osorio-Lopez failed to rebut the presumption of competence.

## III.   Osorio-Lopez's Waiver of the Right to Counsel Was Not Knowing and Intelligent

### A.   Standard of Review and Applicable Law

"The Sixth Amendment guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense.'" *Williams v. State*, 252 S.W.3d 353, 355–56 (Tex. Crim. App. 2008) (quoting U.S. CONST. amend. VI).[7]  As the Texas Court of Criminal Appeals has explained,

> The right to counsel at trial is regarded as fundamental.  The assistance of counsel protects a defendant's right to a fair trial; counsel ensures that the prosecution's case is subjected to meaningful adversarial testing and safeguards the defendant's rights.  An indigent defendant is therefore entitled to appointed counsel unless the defendant competently, intelligently, and voluntarily waives the right to counsel.

*Id.* (citations omitted).  Although "the right to defend oneself at trial is 'fundamental' in nature, it is clear that it is representation by counsel that is the standard, not the exception." *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152, 161 (2000) (footnote omitted) (citation omitted).  As a result, there is a "strong presumption against" waiver of the right to counsel. *Patterson v. Illinois*, 487 U.S. 285, 307 (1988) (Stevens, J., dissenting).  Such a waiver "may only be accepted if made with full awareness of 'the dangers and disadvantages of self-

---

[7]The Texas Code of Criminal Procedure states, "A defendant is entitled to representation by counsel before any court-ordered competency evaluation and during any proceeding at which it is suggested that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.006(a).  The constitutional guarantee of the right to counsel has been held to include critical events in a criminal prosecution such as a competency hearing. *See Estelle v. Smith*, 451 U.S. 454, 469–71 (1981) (recognizing Sixth Amendment right to counsel when defendant undergoes psychological examination); *Kirby v. Illinois*, 406 U.S. 682, 688–89 (1972) (holding that, under the Sixth Amendment, a person is entitled to the help of a lawyer "at or after the time that adversary judicial proceedings have been initiated against him . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment").  As the State aptly points out, a retrospective competency hearing is integral to the trial itself.

representation.'" *Id.* (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)). "The prosecution has a heavy burden to demonstrate that a waiver of constitutional rights was made intelligently, knowingly, and voluntarily, particularly when that right was the right to counsel." *Geeslin v. State*, 600 S.W.2d 309, 313 (Tex. Crim. App. [Panel Op.] 1980).

"In order competently and intelligently to invoke his Sixth Amendment right to represent himself, an accused 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."'" *Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989) (quoting *Faretta*, 422 U.S. at 835); *see* TEX. CODE CRIM. PROC. ANN. art 1.051(g) (Supp.) (court "shall advise the defendant of the nature of the charges . . . and, if the defendant is proceeding to trial, the dangers and disadvantages of self-representation"). As explained by the Texas Court of Criminal Appeals,

> Generally, the record must be sufficient for the reviewing court to make an assessment that appellant knowingly exercised his right to defend himself. Admonishments of defendants who wish to proceed pro se should include an effort to ensure that the defendant is aware of the practical disadvantages of representing himself. The defendant should be aware that there are technical rules of evidence and procedure, and he will not be granted any special consideration solely because he asserted his pro se rights. *Martin*[ *v. State*, 630 S.W.2d 952 (Tex. Crim. App. 1982)]; *Burton v. State*, 634 S.W.2d 692 (Tex. [Crim.] App. [Panel Op.] 1982). As *Faretta*, supra, held, his eyes should be open to the fact that, while it is undoubtedly his right, he is about to embark on a risky course.

*Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988). The trial court is not, however, required to follow a "particular 'script'" or engage in "formulaic questioning" in order "to assure itself that an accused who has asserted his right to self-representation does so with eyes open." *Burgess v. State*, 816 S.W.2d 424, 428 (Tex. Crim. App. 1991). "It is required only that the

record 'contain proper admonishments concerning pro se representation and any necessary inquiries of the defendant so that the trial court may make "an assessment of his knowing exercise of the right to defend himself."'" *Id.* (quoting *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984)).

We review de novo the issue of whether Osorio-Lopez validly waived his constitutional right to counsel. *See United States v. Garcia-Hernandez*, 74 F. App'x 412, 415 (5th Cir. 2003) (per curiam) (reviewing de novo defendant's claim that waiver of Sixth Amendment right to counsel was not valid because trial court failed to admonish him about dangers and disadvantages of self-representation); *Hernandez v. State*, No. 03-19-00202-CR, 2020 WL 3526355 (Tex. App.—Austin June 30, 2020, no pet.) (mem. op., not designated for publication).

**B.      Analysis**

Our examination of the record reveals that it falls short of satisfying the State's heavy burden to demonstrate Osorio-Lopez's knowing and intelligent waiver of his right to counsel. The trial court did not inform Osorio-Lopez of the dangers and disadvantages of self-representation in light of evidentiary and procedural rules. It did not inform him of any potential consequences of the waiver of the right to counsel. It did not inform him of the potential consequences of the proceeding or the dangers and disadvantages of self-representation in a retrospective competency hearing. Indeed, it is not clear from the record that Osorio-Lopez appreciated the nature and purpose of the hearing at which he represented himself.[8] Certainly,

---

[8]The State points out that the trial court explained the purpose of the retrospective competency hearing during the feasibility hearing and again at the retrospective competency hearing. At the feasibility hearing on November 5, 2019, the trial court, in addressing all participants, stated that the purpose of the hearing was "to make a determination as to whether it [was then] feasible to hold a competency trial [that day] regarding Mr. Osorio-

13

there is nothing in the record to demonstrate that Osorio-Lopez—in seeking to represent himself—made his choice with open eyes.

Osorio-Lopez was only advised that he had the right to have an attorney present with him. This single admonishment does not satisfy *Faretta*. *See Goffney v. State*, 843 S.W.2d 583, 585 (Tex. Crim. App. 1992) ("The absence of evidence of admonishments being given to the defendant fails to meet the requirements of *Faretta* and *Johnson* [*v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988)])"; *see also Manley v. State*, 23 S.W.3d 172, 174 (Tex. App.—Waco 2000, pet. ref'd). In *Manley*, the defendant was admonished before voir dire[9] as follows:

> The Court: Mr. Manley, it's my understanding that you wish to waive your rights to have an attorney represent you, and you are representing yourself; is that correct, sir.
>
> Manley: That's correct.
>
> The Court: And under the law we call that pro se.
>
> Manley: Yes.
>
> The Court: You are representing yourself pro se?
>
> Manley: Yes, sir.
>
> The Court: And you are ready to go forward at this time?
>
> Manley: Yes, sir.

---

Lopez's competence in October of 2018." At the retrospective competency hearing on February 25, 2020, the trial court addressed all participants, stating, "We are here today for a competency trial under the Code of Criminal Procedure 46B, Subsection C to determine Mr. Lopez' competence during trial in October 2018."

[9]Because admonishments must be given before any act of self-representation by the defendant, the trial court's additional admonishments after voir dire came too late. *Manley*, 23 S.W.3d at 175 (citing *Goffney*, 843 S.W.2d at 584).

*Id.* at 174. Our sister court readily concluded that the trial court erred in failing to sufficiently admonish Manley of the dangers and disadvantages of representing himself. *Id.* at 175. The single admonishment given to Osorio-Lopez likewise fails to satisfy *Faretta*.[10]

The State maintains that, even if Osorio-Lopez was not admonished in accordance with *Faretta*, his waiver of the right to counsel was nevertheless knowing and intelligent when considered in light of "the whole of [Osorio-Lopez's] documented experiences in this case up to that point." The crux of the State's argument is based on the premise that, "[b]ecause [Osorio-Lopez] had been though a trial and his own cross-examination already, he knew first-hand the advantages in the law that experienced attorneys [had] over himself and that not knowing something could be detrimental to him." (Footnote omitted). The State also points out that, at the informal inquiry into Osorio-Lopez's competency in February 2018, the trial court expressly admonished Osorio-Lopez regarding the right to counsel.

The State acknowledges that,

> [a]lthough this was during the proceeding where the participants all agreed there was reason to suspect [Osorio-Lopez] might be incompetent and he was in fact found incompetent shortly thereafter . . . [Osorio-Lopez] retained some capacity for rational thought and some of the trial court's express admonishments may have made an impact on him.

As a result, the State reasons that "[Osorio-Lopez] was sufficiently aware of what he was giving up when he declined to have [counsel] represent him at the retrospective [competency] hearing."

In support of its argument, the State relies on *Grant v. State*, 255 S.W.3d 642, 647 (Tex. App.—Beaumont 2007, no pet.), *Neal v. State*, 689 S.W.2d 420, 427 (Tex. Crim. App. 1984),

---

[10]At oral argument, the State conceded that Osorio-Lopez was not properly admonished in accordance with *Faretta*.

15

*United States v. Kimball*, 291 F.3d 726, 730 (11th Cir. 2002) (per curiam), and *Ferguson v.*

*Bruton*, 217 F.3d 983, 985 (8th Cir. 2000) (per curiam). We do not believe those cases support

the proposition that, in *this* case, Osorio-Lopez's knowledge of the legal system was such that his

waiver of the right to counsel, absent *Faretta* admonishments, was knowing and intelligent. We

examine each in turn.

*Grant* involved the trial of a defendant who elected to represent himself in a murder trial

after receiving the following admonishments:

> THE COURT: Okay. Mr. Grant, it's been brought to my attention that maybe you want to represent yourself in this case?
>
> THE DEFENDANT: Yeah, yes, sir.
>
> THE COURT: Are you sure about that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You understand that you have an absolute right if you can't afford an attorney that I will appoint one. In fact, I've appointed a board certified attorney by the name of Doug Barlow to represent you. And Mr. Barlow has been working on your case and, from what I understand, is ready to go to trial on your behalf today. But you have an absolute right to represent yourself if that's what you chose to do.
>
> THE DEFENDANT: I want to represent myself.
>
> THE COURT: Do you have any questions about the pitfalls, about how it's not in your best interest for you to represent yourself? Do you have any questions about that?
>
> THE DEFENDANT: No.
>
> THE COURT: I'm gonna let you represent yourself. Mr. Barlow, you're gonna be standby counsel. And we're ready to proceed.

*Id.* at 645.

On appeal, Grant claimed that "[t]he trial court failed to admonish him sufficiently concerning the dangers of self-representation" and that "[he] was denied his right to counsel." *Id.* at 644. In analyzing the issue of whether Grant's decision to represent himself was made voluntarily, knowingly, and intelligently, the *Grant* court cited *Iowa v. Tovar*, 541 U.S. 77, 92 (2004),[11] for the proposition that "[c]ourts look at the totality of the particular facts and circumstances of a case in deciding whether the defendant's decision was knowing, intelligent, and voluntary." *Id.* at 647. In *Tovar*, the United States Supreme Court stated, "The information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Tovar*, 541 U.S. at 88 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

One of the factors the court considered in *Grant* was the fact that that "was not Grant's first experience with the criminal justice system." *Grant*, 255 S.W.3d at 648. Although the court did not elaborate on Grant's previous experience with the criminal justice system, it cited *Kimball*, 291 F.3d at 730, in support of the proposition that a defendant's prior experience with the criminal justice system is a circumstance entitled to consideration in determining whether a waiver of the right to counsel was knowing, intelligent, and voluntary. *Grant*, 255 S.W.3d at 648. Other circumstances the court considered in its waiver analysis included the fact that Grant

---

[11]In *Tovar*, the United States Supreme Court held that two admonishments required by the Iowa Supreme Court in connection with a guilty plea were not required by the Federal Constitution: (1) "[T]he trial judge [must] advise the defendant generally that there are defenses to criminal charges that may not be known by laypersons and that the danger in waiving the assistance of counsel in deciding whether to plead guilty is the risk that a viable defense will be overlooked," and (2) "[t]he defendant should be admonished that by waiving his right to an attorney he will lose the opportunity to obtain an independent opinion on whether, under the facts and applicable law, it is wise to plead guilty." *Tovar*, 541 U.S. at 87–88, 91.

had standby counsel and consulted with counsel during the trial. He was represented by counsel at the time he invoked his right to self-representation, and counsel did not object to the "validity of Grant's decision to represent himself during the trial." *Id.* at 648–49. Ultimately, the court concluded that, under the totality of the circumstances, Grant's decision to represent himself was "an informed and voluntary decision." *Id.* at 649.

The trial court's admonishments in *Grant* were limited to advising Grant that he was entitled to counsel and, albeit in the form of a question, advising that it was "not in [his] best interest for [him] to represent [himself]." *Id.* at 645. Even allowing for the other factors the court considered, we cannot say we agree with the court's decision. That said, the facts in the case before us are different.

Here, the State is relying, at least in part, on the premise that Osorio-Lopez could recall and understand, in February 2020, the admonishments given to him by the trial court in February 2018. At that time, the trial court undertook to explain the various roles of the attorneys and the judge because there were "issues regarding [Osorio-Lopez's] understanding of what [they were] doing [there that day]."[12] Osorio-Lopez was declared incompetent to stand trial on April 18,

---

[12]At the February 13, 2018, hearing, the trial court explained—in the context of attempting to determine whether Osorio-Lopez was competent to stand trial—that the trial court could not assist him at trial:

> It concerned me that you might think that -- that I would be responsible for basically not representing you but somehow or another you relying on me to take care of you in the case because I cannot help you if you choose to represent yourself. I cannot tell you how to present evidence, I can't tell you what the -- I can't -- you would be -- you would be at a serious disadvantage because you would not know the rules of court, the rules of evidence or the -- or Texas law. So that concerned me, okay. . . . In the United States we -- there's a symbol of justice and justice is blind with a blindfold and that's because I don't know any of the facts and will only learn those when the evidence is brought before me, okay. I understand that you might have some -- I understand you have a seventh grade education, correct?

2018, and was thereafter hospitalized at Rusk State Hospital. We do not believe it is reasonable to consider any information the trial court imparted to Osorio-Lopez in February 2018—when he presumably did not understand the proceedings in the trial court—in our analysis of whether his waiver of counsel in 2020 was knowing, intelligent, and voluntary.

Likewise, we do not subscribe to the position that, because Osorio-Lopez was tried after his competency was restored, his waiver of counsel in 2020 was elevated to the level of knowing and intelligent. This is particularly true in light of the fact that, at his trial of conviction, his attorney raised serious questions about his continued competency, resulting in the retrospective competency trial at which Osorio-Lopez waived his right to counsel.

The State also relies on the 1984 *Neal* decision from the Texas Court of Criminal Appeals. *Neal* involved an appeal from a criminal defense attorney's conviction of official misconduct. *Neal*, 689 S.W.2d at 422. On appeal, Neal argued that the trial court erred in permitting him to proceed to trial without counsel "OR WITHOUT A VALID WAIVER OF

---

> [OSORIO-LOPEZ]: Yes.

> Later in the hearing, the trial court asked Osorio-Lopez when he was in the hospital. The following colloquy ensued:

>> [OSORIO-LOPEZ]: I got out of the hospital February, March, hospital's [sic] in Wichita Falls.

>> THE COURT: And what were you in the hospital for?

>> [OSORIO-LOPEZ]: Because an attorney sent me and that's why I don't want an attorney. He sent me and he had me sign some things that cause me problems.

>> THE COURT: Did an attorney send you or did a court send you?

>> [OSORIO-LOPEZ]: I don't know if it was the court or the two attorneys, I don't know.

> It was in this latter exchange that Osorio-Lopez made the comment that he did not want an attorney. It is plain from the record that the trial court did not administer *Faretta* admonishments for the purpose of determining whether Osorio-Lopez could represent himself.

19

THE RIGHT TO COUNSEL." *Id.* at 425. In the trial court, Neal had filed a motion to self-represent, which read, in pertinent part:

> That Jack G. Neal, defendant, is a duly licensed attorney of the State Bar of Texas with many years of trial experience in both civil and criminal matters; that he is well able to represent himself in this cause, being knowledgeable both as to the law and the facts; and further, that he desires to appear *pro se* in this matter, and that he has so appeared in this cause to this time.

*Id.* at 425–26. The trial court signed an order permitting Neal to represent himself. *Id.* at 426. At the hearing, the trial court indicated it had signed the order and asked Neal if it was his desire to proceed pro se. Neal indicated that that indeed was his desire. *Id.*

Even though he was an experienced, knowledgeable trial lawyer, Neal claimed that, under *Faretta*, the trial court was not permitted to infer that Neal "knew and appreciated the dangers of self-representation, or understood the charge against him." *Id.* In concluding that Neal made a knowing and intelligent waiver of his right to counsel, the court wrote, "[C]ompetence in the law evidenced by licensure as an attorney and years of experience in criminal litigation, obviously carries with it an awareness of the dangers of self-representation." *Id.*

*Neal* is obviously different from this case. Neal was an experienced trial attorney who, by virtue of that status, was aware of the dangers of self-representation. In contrast, the record here indicates that Osorio-Lopez (1) had a seventh-grade education, (2) was not fluent in English, and (3) had been declared incompetent to stand trial. Even after restoration of competency, his competence was again called into question. Although the State relies on Osorio-Lopez's past experience with the legal system to infer that his waiver of the right to

20

counsel was knowing and intelligent, we find no support that this consideration weighs in favor of finding an effective waiver of the right to counsel.

This case also stands in contrast with *Kimball*, 291 F.3d at 730, cited by the State in support of the proposition that a defendant's prior experience with the criminal justice system is a circumstance entitled to consideration in determining whether a waiver of the right to counsel was knowing, intelligent, and voluntary. Kimball appealed his conviction of conspiracy by claiming, among other things, "that he was denied his Sixth Amendment right to counsel when the district court allowed him to represent himself." *Id.* at 729. In rejecting that argument, the court observed that the district court conducted a *Faretta* inquiry, during which the court "repeatedly told Defendant that it was a bad idea to defend himself and warned defendant about the specific risks and difficulties in doing so." *Id.* at 730. The federal court also noted (1) that Kimball was "a fairly successful and sophisticated businessman," (2) that his lawyer had explained the risks of acting pro se to Kimball as well, and (3) that Kimball had some courtroom experience because, "in the past, he had acted as his own lawyer in a felony case." *Id.* at 731.

Unlike Kimball, Osorio-Lopez was not admonished in accordance with *Faretta*. Importantly, consideration of Kimball's past experience in representing himself in a felony case and his status as a businessman did not remove the requirement to administer proper *Faretta* admonishments. Instead, those matters were considered in addition to *Faretta* admonishments. Here, the State would have us find that Osorio-Lopez's presence at his trial of conviction and the trial court's explanations about the logistics of a trial at a time when Osorio-Lopez was presumably incompetent were a viable substitute for proper *Faretta* admonishments. This we

21

decline to do. Finally, unlike *Kimball*, the record before us is devoid of evidence that Osorio-Lopez's attorney explained the risks of acting pro se to Osorio-Lopez.

Finally, in *Ferguson*, Ferguson discharged his public defender and proceeded pro se with standby trial counsel. *Ferguson*, 217 F.3d at 984. On the appeal of his denial of federal habeas corpus relief, Ferguson claimed, among other things, that the waiver of his counsel was invalid. *Id.* The Court stated, "[A] specific warning on the record of the dangers and disadvantages of self-representation is not an absolute necessity in every case if the record shows that the defendant had this required knowledge from other sources." *Id.* at 985 (quoting *Meyer v. Sargent*, 854 F.2d 1110, 1114 (8th Cir. 1988)). In cases in which "the trial court did not adequately caution the defendant about the perils of self-representation," the Court stated that it "looked to the defendant's past contacts with the criminal justice system and his performance at the proceeding at which he represented himself." *Id.* In applying that standard, the Court observed that "Ferguson was active and articulate at trial, raising detailed objections and extensively examining witnesses, and that he had the assistance of standby counsel." *Id.* The Court further noted that Ferguson "had a criminal record and had displayed some savvy about the functioning of the criminal justice system." *Id.* The Court, therefore, determined that Ferguson's waiver of counsel was valid.

Although an effective waiver of the right to counsel depends on the totality of the circumstances, which includes considering "the background, experience, and conduct of the accused," *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), we conclude that Osorio-Lopez's background, experience, and conduct do not mitigate in favor of finding an effective waiver of

22

the right to counsel. As previously stated, Osorio-Lopez had a seventh-grade education and was not fluent in English. Further, his prior dealings with the criminal justice system in Upshur County revealed that he was first incompetent to stand trial and that his competency was again called into question during his trial of conviction. If we were to examine Osorio-Lopez's performance at the retrospective competency trial, we would conclude that such performance failed to demonstrate any degree of savvy about the functioning of the criminal justice system. We observe that Osorio-Lopez's criminal record, beyond his Upshur County cases, involved a misdemeanor failure to identify in Fort Worth. It also appears that Osorio-Lopez may have been hospitalized in Wichita Falls after he served his time on the failure to identify conviction. Finally, unlike *Ferguson*, nothing in the record before us indicates that Osorio-Lopez had standby counsel at the retrospective competency hearing.

Based on the lack of *Faretta* admonishments and the totality of the particular facts and circumstances of this case, we conclude that Osorio-Lopez's waiver of the right to counsel was not knowing and intelligent.

## V.     Conclusion

Because Osorio-Lopez's waiver of the right to counsel was not knowing and intelligent, his right to counsel remained intact. As a result, Osorio-Lopez was denied his right to counsel when he was permitted to proceed pro se at the retrospective competency trial. Osorio-Lopez's trial was thus "rendered fundamentally unfair and unreliable," and prejudice is presumed. *Williams*, 252 S.W.3d at 357.

We reverse the trial court's competency determination and remand for a new retrospective competency trial.[13]  The trial court is instructed to appoint counsel—who will not be a potential witness at that trial—to represent Osorio-Lopez at the retrospective competency trial.

Scott E. Stevens
Chief Justice

Date Submitted:     March 28, 2023
Date Decided:       April 28, 2023

Do Not Publish

---

[13]Based on this disposition, we need not decide whether insufficient *Faretta* admonishments are subject to a harm analysis.